## MAY *v.* ANDERSON.

No. 244. Argued January 6, 1953.—Decided May 18, 1953.

*Ralph Atkinson* and *F. W. Springer* argued the cause and filed a brief for appellant.

*I. Engle* argued the cause and filed a brief for appellee.

MR. JUSTICE BURTON delivered the opinion of the Court.

The question presented is whether, in a habeas corpus proceeding attacking the right of a mother to retain possession of her minor children, an Ohio court must give full faith and credit to a Wisconsin decree awarding custody of the children to their father when that decree is obtained by the father in an *ex parte* divorce action in

a Wisconsin court which had no personal jurisdiction over the mother. For the reasons hereafter stated, our answer is no.

This proceeding began July 5, 1951, when Owen Anderson, here called the appellee, filed a petition for a writ of habeas corpus in the Probate Court of Columbiana County, Ohio. He alleged that his former wife, Leona Anderson May, here called the appellant, was illegally restraining the liberty of their children, Ronald, Sandra and James, aged, respectively, 12, 8 and 5, by refusing to deliver them to him in response to a decree issued by the County Court of Waukesha County, Wisconsin, February 5, 1947. With both parties and their children before it, the Probate Court ordered that, until this matter be finally determined, the children remain with their mother subject to their father's right to visit them at reasonable times.

After a hearing "on the petition, the stipulation of counsel for the parties as to the agreed statement of facts, and the testimony," the Probate Court decided that it was obliged by the Full Faith and Credit Clause of the Constitution of the United States [1] to accept the Wisconsin decree as binding upon the mother. Accordingly, proceeding to the merits of the case upon the issues presented by the stipulations of counsel, it ordered the children discharged from further restraint by her. That order has been held in abeyance and the children are still with her. The Court of Appeals for Columbiana County, Ohio, affirmed. 91 Ohio App. 557, 107 N. E. 2d 358. The Supreme Court of Ohio, without opinion, denied a motion directing the Court of Appeals to certify

---

[1] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." Art. IV, § 1.

its record for review, and dismissed an appeal on the ground that no debatable constitutional question was involved. 157 Ohio St. 436, 105 N. E. 2d 648, 25 Ohio Bar 199.

On appeal to this Court, we noted probable jurisdiction. Inasmuch, however, as neither the Court of Appeals nor the Supreme Court of Ohio relied upon the Ohio statute alleged to be the basis of the appeal, we have treated the appeal as a petition for a writ of certiorari, granted pursuant to 28 U. S. C. (Supp. V) § 2103, while continuing, for convenience, to refer to the parties as appellant and appellee.[2]

The parties were married in Wisconsin and, until 1947, both were domiciled there. After marital troubles developed, they agreed in December, 1946, that appellant should take their children to Lisbon, Columbiana County, Ohio, and there think over her future course. By New Year's Day, she had decided not to return to Wisconsin and, by telephone, she informed her husband of that decision.

Within a few days he filed suit in Wisconsin, seeking both an absolute divorce and custody of the children. The only service of process upon appellant consisted of the delivery to her personally, in Ohio, of a copy of the Wisconsin summons and petition. Such service is au-

---

[2] The state statute alleged to have been drawn in question by appellant as repugnant to the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States was § 7996 of the Ohio General Code of 1910 providing that "The husband is the head of the family. He may choose any reasonable place or mode of living, and the wife must conform thereto." The Probate Court was said to have upheld that section as establishing the legal domicile of the children with their father and, on that basis, to have upheld the Wisconsin decree as validly depriving their mother of her custody over her children, although the Wisconsin court never obtained personal jurisdiction over her.

thorized by a Wisconsin statute for use in an action for a divorce but that statute makes no mention of its availability in a proceeding for the custody of children.[3] Appellant entered no appearance and took no part in this Wisconsin proceeding which produced not only a decree divorcing the parties from the bonds of matrimony but a decree purporting to award the custody of the children to their father, subject to a right of their mother to visit them at reasonable times. Appellant contests only the validity of the decree as to custody. See *Estin* v. *Estin,* 334 U. S. 541, and *Kreiger* v. *Kreiger,* 334 U. S. 555, recognizing the divisibility of decrees of divorce from those for payment of alimony.

Armed with a copy of the decree and accompanied by a local police officer, appellee, in Lisbon, Ohio, demanded and obtained the children from their mother. The record does not disclose what took place between 1947 and 1951, except that the children remained with their father in Wisconsin until July 1, 1951. He then brought them

---

[3] "262.12 *Publication or service outside state, when permitted.* When the summons cannot with due diligence be served within the state, the service of the summons may be made without the state or by publication upon a defendant when it appears from the verified complaint that he is a necessary or proper party to an action or special proceeding as provided in Rule 262.13, in any of the following cases:

.        .        .        .        .

"(5) When the action is for a divorce or for annulment of marriage.

.        .        .        .        .

"262.13 *Publication or service outside state; . . . mode of service.*

.        .        .        .        .

"(4) In the cases specified in Rule 262.12 the plaintiff may, at his option and in lieu of service by publication, cause to be delivered to any defendant personally without the state a copy of the summons and verified complaint or notice of object of action as the case may require, which delivery shall have the same effect as a completed publication and mailing. . . ." Wis. Stat., 1949.

back to Lisbon and permitted them to visit their mother. This time, when he demanded their return, she refused to surrender them.

Relying upon the Wisconsin decree, he promptly filed in the Probate Court of Columbiana County, Ohio, the petition for a writ of habeas corpus now before us. Under Ohio procedure that writ tests only the immediate right to possession of the children. It does not open the door for the modification of any prior award of custody on a showing of changed circumstances. Nor is it available as a procedure for settling the future custody of children in the first instance.

> "It is well settled that *habeas corpus* is not the proper or appropriate action to determine, as between parents, who is entitled to the custody of their minor children.
>
> "The agreed statement of facts disclosed to the Court of Appeals that the children were in the custody of their mother. There being no evidence that the appellant had a superior right to their custody, that court was fully warranted in concluding that the children were not illegally restrained of their liberty." *In re Corey*, 145 Ohio St. 413, 418, 61 N. E. 2d 892, 894–895.[4]

The narrow issue thus presented was noted but not decided in *Halvey* v. *Halvey*, 330 U. S. 610, 615–616. There a mother instituted a suit for divorce in Florida. She obtained service on her absent husband by publica-

---

[4] This limitation contrasts with the procedure in states where a court, upon securing the presence before it of the parents and children in response to a writ of habeas corpus, may proceed to determine the future custody of the children. See *e. g.*, *Halvey* v. *Halvey*, 330 U. S. 610 (New York procedure); *Boor* v. *Boor*, 241 Iowa 973, 43 N. W. 2d 155; *Helton* v. *Crawley*, 241 Iowa 296, 41 N. W. 2d 60.

tion and he entered no appearance. The Florida court granted her a divorce and also awarded her the custody of their child. There was, therefore, inherent in that decree the question "whether in absence of personal service the Florida decree of custody had any binding effect on the husband; . . . ." *Id.,* at 615. We were not compelled to answer it there and a decision on it was expressly reserved.

Separated as our issue is from that of the future interests of the children, we have before us the elemental question whether a court of a state, where a mother is neither domiciled, resident nor present, may cut off her immediate right to the care, custody, management and companionship of her minor children without having jurisdiction over her *in personam.* Rights far more precious to appellant than property rights will be cut off if she is to be bound by the Wisconsin award of custody.

> "[I]t is now too well settled to be open to further dispute that the 'full faith and credit' clause and the act of Congress passed pursuant to it[5] do not entitle a judgment *in personam* to extra-territorial effect if it be made to appear that it was rendered without jurisdiction over the person sought to be bound." *Baker* v. *Baker, Eccles & Co.,* 242 U. S. 394, 401, and see 403; *Thompson* v. *Whitman,* 18 Wall. 457; *D'Arcy* v. *Ketchum,* 11 How. 165.

In *Estin* v. *Estin, supra,* and *Kreiger* v. *Kreiger, supra,* this Court upheld the validity of a Nevada divorce obtained *ex parte* by a husband, resident in Nevada, insofar as it dissolved the bonds of matrimony. At the same time, we held Nevada powerless to cut off, in that proceeding, a spouse's right to financial support under the

---

[5] See 28 U. S. C. (Supp. V) § 1738, as developed from the Act of May 26, 1790, 1 Stat. 122.

prior decree of another state.[6]  In the instant case, we recognize that a mother's right to custody of her children is a personal right entitled to at least as much protection as her right to alimony.

In the instant case, the Ohio courts gave weight to appellee's contention that the Wisconsin award of custody binds appellant because, at the time it was issued, her children had a technical domicile in Wisconsin, although they were neither resident nor present there.[7] We find it unnecessary to determine the children's legal domicile because, even if it be with their father, that does not give Wisconsin, certainly as against Ohio, the personal jurisdiction that it must have in order to deprive their mother of her personal right to their immediate possession.[8]

---

[6] ". . . The fact that the requirements of full faith and credit, so far as judgments are concerned, are exacting, if not inexorable (*Sherrer* v. *Sherrer, supra* [334 U. S. 343]), does not mean, however, that the State of the domicile of one spouse may, through the use of constructive service, enter a decree that changes every legal incidence of the marriage relationship.

.          .          .          .          .

"The result in this situation is to make the divorce divisible—to give effect to the Nevada decree insofar as it affects marital status and to make it ineffective on the issue of alimony." 334 U. S., at 546, 549.

[7] By stipulation, the parties recognized her domicile in Ohio. See also, *Estin* v. *Estin, supra; Kreiger* v. *Kreiger, supra; Williams* v. *North Carolina,* 317 U. S. 287.

For the general rule that in cases of the separation of parents, apart from any award of custody of the children, the domicile of the children is that of the parent with whom they live and that only the state of that domicile may award their custody, see Restatement, Conflict of Laws (1934), §§ 32 and 146, Illustrations 1 and 2.

[8] ". . . the weight of authority is in favor of confining the jurisdiction of the court in an action for divorce, where the defendant is a non-resident and does not appear, and process upon the defendant is by substituted service only, to a determination of the *status* of the parties. . . . This rule of law extends to children who are

The judgment of the Supreme Court of Ohio, accordingly, is reversed and the cause is remanded to it for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE CLARK, not having heard oral argument, took no part in the consideration or decision of this case.

MR. JUSTICE FRANKFURTER, concurring.

The views expressed by my brother JACKSON make it important that I state, in joining the Court's opinion, what I understand the Court to be deciding and what it is not deciding in this case.

What is decided—the only thing the Court decides—is that the Full Faith and Credit Clause does not require Ohio, in disposing of the custody of children in Ohio, to accept, in the circumstances before us, the disposition made by Wisconsin. The Ohio Supreme Court felt itself so bound. This Court does not decide that Ohio would be precluded from recognizing, as a matter of local law, the disposition made by the Wisconsin court. For Ohio to give respect to the Wisconsin decree would not offend

not within the jurisdiction of the court when the decree is rendered, where the defendant is not a resident of the state of the seat of the court, and has neither been personally served with process nor appeared to the action. . . . [Citing cases.]

"By the authority of the cases *supra,* a decree of the custody of a minor child under the circumstances stated is void." *Weber* v. *Redding,* 200 Ind. 448, 454–455, 163 N. E. 269, 271. See also, *Sanders* v. *Sanders,* 223 Mo. App. 834, 837–838, 14 S. W. 2d 458, 459–460; *Carter* v. *Carter,* 201 Ga. 850, 41 S. E. 2d 532.

The instant case does not present the special considerations that arise where a parent, with or without minor children, leaves a jurisdiction for the purpose of escaping process or otherwise evading jurisdiction, and we do not have here the considerations that arise when children are unlawfully or surreptitiously taken by one parent from the other.

the Due Process Clause. Ohio is no more precluded from doing so than a court of Ontario or Manitoba would be, were the mother to bring the children into one of these provinces.

Property, personal claims, and even the marriage status (see, *e. g., Sherrer* v. *Sherrer,* 334 U. S. 343), generally give rise to interests different from those relevant to the discharge of a State's continuing responsibility to children within her borders. Children have a very special place in life which law should reflect. Legal theories and their phrasing in other cases readily lead to fallacious reasoning if uncritically transferred to determination of a State's duty towards children. There are, of course, adjudications other than those pertaining to children, as for instance decrees of alimony, which may not be definitive even in the decreeing State, let alone binding under the Full Faith and Credit Clause. Interests of a State other than its duty towards children may also prevail over the interest of national unity that underlies the Full Faith and Credit Clause. But the child's welfare in a custody case has such a claim upon the State that its responsibility is obviously not to be foreclosed by a prior adjudication reflecting another State's discharge of its responsibility at another time. Reliance on opinions regarding out-of-State adjudications of property rights, personal claims or the marital status is bound to confuse analysis when a claim to the custody of children before the courts of one State is based on an award previously made by another State. Whatever light may be had from such opinions, they cannot give conclusive answers.

Mr. Justice Jackson, whom Mr. Justice Reed joins, dissenting.

The Court apparently is holding that the Federal Constitution prohibits Ohio from recognizing the validity of

this Wisconsin divorce decree insofar as it settles custody of the couple's children. In the light of settled and unchallenged precedents of this Court, such a decision can only rest upon the proposition that Wisconsin's courts had no jurisdiction to make such a decree binding upon appellant. *Baker* v. *Baker, Eccles & Co.*, 242 U. S. 394, 401; *Esenwein* v. *Commonwealth*, 325 U. S. 279, 281.

A conclusion that a state must not recognize a judgment of a sister commonwealth involves very different considerations than a conclusion that it must do so. If Wisconsin has rendered a valid judgment, the Constitution not only requires every state to give it full faith and credit, but 28 U. S. C. §.1738, referring to such judicial proceedings, commands that they "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." [1] The only escape from obedience lies in a holding that the judgment rendered in Wisconsin, at least as to custody, is void and entitled to no standing even in Wisconsin. It is void only if it denies due process of law.

The Ohio courts reasoned that although personal jurisdiction over the wife was lacking, domicile of the children in Wisconsin was a sufficient jurisdictional basis to enable Wisconsin to bind all parties interested in their custody. This determination that the children were domiciled in Wisconsin has not been contested either at our bar or below. Therefore, under our precedents, it is conclusive. *Williams* v. *North Carolina*, 317 U. S. 287, 302. The husband, plaintiff in the case, was at all times domiciled in Wisconsin; the defendant-wife was a Wisconsin native,

---

[1] None of the cases involving exceptions to this rule are in point here. See, *e. g.*, *Fall* v. *Eastin*, 215 U. S. 1.

was married there and both were domiciled in that State until her move in December 1946, when the parties stipulate that she acquired an Ohio domicile. The children were born in Wisconsin, were always domiciled there, and were physically resident in Wisconsin at all times until December 1946, when their mother took them to Ohio with her. But the Ohio court specifically found that she brought the children to Ohio with the understanding that if she decided not to go back to Wisconsin the children were to be returned to that State. In spite of the fact that she did decide not to return, she kept the children in Ohio. It was under these circumstances that the Wisconsin decree was rendered in February 1947, less than two months after the wife had given up her physical residence in Wisconsin and held the children out of the State in breach of her agreement.

The husband subsequently went to Ohio, retrieved the children and took them back to Wisconsin, where they remained with him for four years. Then he voluntarily brought them to Ohio for a visit with their mother, whereupon she refused to surrender them, and he sought habeas corpus in the Ohio courts. In this situation Wisconsin was no meddler reaching out to draw to its courts controversies that arose in and concerned other legal communities. If ever domicile of the children plus that of one spouse is sufficient to support a custody decree binding all interested parties, it should be in this case.[2] Cf. *Yarborough* v. *Yarborough,* 290 U. S. 202, 210.

I am quite aware that in recent times this Court has been chipping away at the concept of domicile as a connecting factor between the state and the individual to

---

[2] American Law Institute, Restatement, Conflict of Laws (1934), §§ 117, 144–147.

determine rights and obligations.[3]  We are a mobile people, historically on the move, and perhaps the rigid concept of domicile derived by common law from feudal attachment to the land is too rigid for a society so restless as ours.  But if our federal system is to maintain separate legal communities, as the Full Faith and Credit Clause evidently contemplates, there must be some test for determining to which of these a person belongs.  If, for this purpose, there is a better concept than domicile, we have not yet hit upon it.  Abandonment of this ancient doctrine would leave partial vacuums in many branches of the law.  It seems to be abandoned here.

The Court's decision holds that the state in which a child and one parent are domiciled and which is primarily concerned about his welfare cannot constitutionally adjudicate controversies as to his guardianship.  The state's power here is defeated by the absence of the other parent for a period of two months.  The convenience of a leave-taking parent is placed above the welfare of the child, but neither party is greatly aided in obtaining a decision. The Wisconsin courts cannot bind the mother, and the Ohio courts cannot bind the father.  A state of the law such as this, where possession apparently is not merely nine points of the law but all of them and self-help the ultimate authority, has little to commend it in legal logic or as a principle of order in a federal system.

Nor can I agree on principle with the Court's treatment of the question of personal jurisdiction of the wife. I agree with its conclusion and that of the Ohio courts that Wisconsin never obtained jurisdiction of the person of the appellant in this action and therefore the jurisdic-

---

[3] Cf. *Curry* v. *McCanless*, 307 U. S. 357; *State Tax Commission* v. *Aldrich*, 316 U. S. 174; the *Dorrance* litigation, 298 U. S. 678, 115 N. J. Eq. 268, 170 A. 601, 309 Pa. 151, 163 A. 303.

tion must be rested on domicile of the husband and children. Cf. *Milliken* v. *Meyer,* 311 U. S. 457. And I have heretofore expressed the view that such personal jurisdiction is necessary in cases where the domicile is obviously a contrived one or the claim of it a sham. *Williams* v. *North Carolina, supra,* at 311; *Rice* v. *Rice,* 336 U. S. 674, 676. But here the Court requires personal service upon a spouse who decamps before the State of good-faith domicile can make provision for custody and support of the children still legally domiciled within it. Wisconsin had a far more real concern with the transactions here litigated than have many of the divorce-mill forums whose judgments we have commanded their sister states to recognize.

In spite of the fact that judges and law writers long have recognized the similarity between the jurisdictional requirements for divorce and for custody,[4] this decision appears to equate the jurisdictional requirements for a custody decree to those for an *in personam* money judgment. One reads the opinion in vain to discover reasons for this choice, unless it is found in the remark that for the wife "rights far more precious . . . than property will be cut off" in the custody proceeding. The force of this cardiac consideration is self-evident, but it seems to me to reflect a misapprehension as to the nature of a custody proceeding or a revision of the views that have heretofore prevailed. When courts deal with inanimate property by the conventional *in rem* proceeding, their principal concern is the distribution of rights in that property, rather than with the welfare of the property apart from its ownership claims. But even where dealing solely with property rights, where concern with the *"res"* is minimal and concern with the claimants is paramount,

---

[4] See Goodrich, Custody of Children in Divorce Suits, 7 Corn. L. Q. 1.

courts may exercise jurisdiction *in rem* over the property without having personal jurisdiction over all of the claimants.[5] Only when they seek to render a party liable to some personal performance must they acquire personal jurisdiction.[6]

The difference between a proceeding involving the status, custody and support of children and one involving adjudication of property rights is too apparent to require elaboration. In the former, courts are no longer concerned primarily with the proprietary claims of the contestants for the *"res"* before the court, but with the welfare of the *"res"* itself. Custody is viewed not with the idea of adjudicating rights *in* the children, as if they were chattels, but rather with the idea of making the best disposition possible for the welfare of the children. To speak of a court's "cutting off" a mother's right to custody of her children, as if it raised problems similar to those involved in "cutting off" her rights in a plot of ground, is to obliterate these obvious distinctions. Personal jurisdiction of all parties to be affected by a proceeding is highly desirable, to make certain that they have had valid notice and opportunity to be heard. But the assumption that it overrides all other considerations and in its absence a state is constitutionally impotent to resolve questions of custody flies in the face of our own cases. The wife's marital ties may be dissolved without personal jurisdiction over her by a state where the husband has a genuine domicile because the concern of that state with the welfare and marital status of its domiciliary is felt to be sufficiently urgent. Certainly the claim of the domiciled parent to relief for himself from the leave-taking parent does not exhaust the power of the state. The claim of

---

[5] *Harris* v. *Balk*, 198 U. S. 215; *Thompson* v. *Whitman*, 18 Wall. 457.

[6] *Pennoyer* v. *Neff*, 95 U. S. 714.

children as well as the home-keeping parent to have their status determined with reasonable certainty, and to be free from an incessant tug of war between squabbling parents, is equally urgent.

The mother in this case would in all probability not be permanently precluded from attempting to redetermine the custody of the children. If the Wisconsin courts would allow modification of the decree upon a showing of changed circumstances, such modification could be accomplished by another state which acquired jurisdiction over the parties. *Halvey* v. *Halvey,* 330 U. S. 610; cf. *Lynde* v. *Lynde,* 181 U. S. 183. And, of course, no judgment settling custody rights as between the parents would itself prevent any state which may find itself responsible for the welfare of the children from taking action adverse to either parent. No such case is before us.

I fear this decision will author new confusions. The interpretative concurrence, if it be a true interpretation, seems to reduce the law of custody to a rule of seize-and-run. I would affirm the decision of the Ohio courts that they should respect the judgment of the Wisconsin court, until it or some other court with equal or better claims to jurisdiction shall modify it.

MR. JUSTICE MINTON, dissenting.

The opinion of the Court and the dissent of MR. JUSTICE JACKSON deal with a jurisdictional question not raised on the record.

As I understand the law of Ohio, "parents are the legal and natural custodians of their minor children and each parent has an equal right to their custody in the absence of an order, judgment, or decree of a court of competent jurisdiction fixing their custody. Section 8032, General Code. It is well settled that *habeas corpus* is not the proper or appropriate action to determine, as between parents, who is entitled to the custody of their minor

children." *In re Corey*, 145 Ohio St. 413, 418, 61 N. E. 2d 892, 894–895.

The instant case was a proceeding in Ohio by habeas corpus brought by the father against the mother for the possession of the minor children. The father could not succeed in this habeas corpus action unless he could show that he had an order of a court of competent jurisdiction awarding him the custody of the children. He produced an authenticated copy of a decree of the County Court of Waukesha County, Wisconsin, valid on its face and unappealed from, which awarded him the custody of the children. It is not contended that this decree is void upon its face, nor did appellant, the mother, challenge its validity in Ohio by any responsive pleading to the petition for habeas corpus.

The only question before the Ohio court was whether that court should give full faith and credit to the Wisconsin decree. That unappealed decree was valid on its face, and its validity was not attacked by any pleading. The validity of the decree is not affected by any admission in this case, on or off the record. As far as this record is concerned, the decree of the Wisconsin court was what it purported to be on its face. Since appellant failed to challenge its validity by any pleading, the decree was entitled to full faith and credit in Ohio under Art. IV, § 1 of the United States Constitution. The Ohio court properly accorded the decree full faith and credit, and it was evidence, together with parenthood, which proved the father's right to possession of the children and entitled him to succeed in the proceeding.

I would therefore affirm.