514 P.2d 1264 (1973)
Roxie WILSONOFF, Appellant,
v.
William WILSONOFF, Appellee.
No. 1770.
Supreme Court of Alaska.
October 19, 1973.
Albert Maffei, Anchorage, for appellant.
No appearance for appellee.
Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, Justices.

OPINION
RABINOWITZ, Chief Justice.
Appellant Roxie Wilsonoff appeals a superior court order awarding the custody of her two minor children to the children's father, appellee William Wilsonoff.
The parties in this litigation were divorced in Montana in 1970, following three years of marriage and the birth of two children.[1] At the time of the divorce, appellant *1265 was 16 years of age and appellee approximately 29. Appellee was granted custody of the two children by the terms of the 1970 Montana decree.
Later in the same year appellant moved the Montana court to modify the divorce decree in order to secure custody of the two children. This motion was denied by the Montana court in a proceeding at which all the interested parties appeared and were in personal attendance.
Then, in February of 1971, William Wilsonoff took the two children from Montana and moved to Alaska where they established residence. In 1972 appellant filed in the Montana court a second motion to modify the 1970 divorce decree, once again in an attempt to secure custody of the parties' two minor children. On April 24, 1972, the Montana court modified the 1970 decree granting control and custody of the two minor children to appellant. Appellee William Wilsonoff did not personally appear or give testimony at this second modification hearing. Appellee's opposition was voiced through affidavits.
The day following the entry of this order in Montana, Roxie Wilsonoff came to Alaska and attempted to forcibly remove the children from William Wilsonoff's custody and control. Her actions were violative of the April 24, 1972, modification order of the Montana court which provided in part that the order "shall be enforced only through the courts and only by their public officers in the jurisdiction wherever ... said children are found." Failing in her attempt to forcibly remove the children from Alaska, appellant sought to secure custody by means of a writ of habeas corpus and an order to show cause in the superior court of Alaska.[2] After an extensive hearing, at which the parties and their witnesses testified fully, the superior court denied the application for writ of habeas corpus, finding that the best interests and welfare of the minor children dictated retention of custody in the natural father.
In his oral decision, the trial court also emphasized that he found from the testimony presented a change in circumstances in the two weeks since the entry of the Montana court's April 24, 1972, modification order. Appellant argues in this appeal that the case at bar presents no evidence of any substantial change in circumstances since the entry of the April 24, 1972, Montana order. In light of this lack of changed circumstances, appellant further contends that the Montana order modifying child custody should have been accorded full faith and credit by the Alaska superior court in the habeas corpus proceeding.
Approximately two weeks passed from the time the Montana order was entered until the time that evidence was heard and an oral decision was rendered by the superior court in Alaska. The superior court found six significant changed circumstances in its findings of fact.[3] Our disposition *1266 of the central issues in this appeal makes it unnecessary for us to decide whether any or all of the six changed circumstances are in fact reflective of changed circumstances.[4]
Review of the superior court's record and findings of fact reveal that the court did not confine itself to a consideration of factors which arose subsequent to the April 24, 1972, Montana modification order. On the basis of all the evidence before it, the superior court concluded that the welfare of the two children would be best served by leaving them in the custody of their father, appellee William Wilsonoff.[5]
In the absence of any substantial change in circumstances since the April 24 order of the Montana court, appellant argues that the Montana custody order should have been accorded full faith and credit by the courts of Alaska.[6] Here the record reveals that at the time the April 24, 1972, Montana modification order was entered, William Wilsonoff and his two children had been domiciled in Alaska for more than a year.[7] The record also discloses that although William Wilsonoff was personally served in Montana prior to that state's most recent custody hearing, he was neither in personal attendance nor represented by counsel at this Montana proceeding.[8] During the course of the habeas corpus proceeding, the superior court heard detailed testimony as to the character, actions, and economic position of the parties, as well as similarly detailed evidence regarding the life style and treatment accorded the two children during the year they resided in Alaska. At the conclusion of the habeas corpus proceedings, the superior court found that appellant Roxie Wilsonoff had not been candid or frank in her testimony; that she was not self-reliant; that she was unable to control *1267 her temper and her emotions; that the element of stability was lacking in the life she planned and that her plans for the future were "ephemeral". Additionally the trial judge found that Roxie Wilsonoff "does not have an adequate home or promise of support from any other person on whom we can rely for that support or on whom she can rely based on the evidence... ."[9] On the other hand, the trial court found appellee William Wilsonoff a well-settled, stable, loving father, who planned to marry a very stable woman. The trial court also determined that appellee had in the past supported the children and had the stability to continue to do so. Finally, the court below found that apparently misleading information had been presented to the Montana court by appellant's mother, Carol Wilsonoff, in connection with the April 1972 modification order. Appellee had submitted to the Montana court Carol Wilsonoff's signed affidavit along with his own affidavit in an attempt to defeat appellant's motion for a change of custody. Carol Wilsonoff's affidavit was in part a declaration that William Wilsonoff was a devoted and loving father, and she apparently recanted this declaration when she testified before the Montana court. Yet, in the Alaska superior court proceedings, Carol Wilsonoff acknowledged by her testimony that William Wilsonoff was indeed a loving father.
Given the evidentiary basis for the trial court's findings and conclusions, we hold that to inflexibly apply the Full Faith and Credit Clause to the instant case would result in a default of our responsibility to ensure the welfare of minor children domiciled in Alaska.[10]
Justice Frankfurter, in reflecting upon the relationship of the Full Faith and Credit Clause to child custody cases, observed that "[l]egal theories and their phrasing in other cases readily lead to fallacious reasoning it uncritically transferred to determination of a State's duty towards children."[11] Justice Frankfurter concluded that a child's welfare had such a great claim upon a state that this responsibility was not to be foreclosed by a prior adjudication made by another state. Justice Frankfurter described the drawbacks to an inflexible application of the Full Faith and Credit Clause in child custody cases when he spoke of:
[T]he evil of requiring one court, which may be peculiarly well-situated for making the delicate determination of what is in the child's best interests, to defer to a prior foreign decree, which may well be the result of a superficial or abstract judgment on what the child's welfare requires.[12]
These observations are particularly applicable to the case at bar. The children whose custody is being contested have both been domiciled in Alaska for more than a year. Alaska as parens patriae of these children has a substantial interest in their welfare. In addition, all of the interested *1268 parties were present at the Alaska custody hearing, whereas this was not true of the Montana proceeding which led to the April 1972 modification order. The Alaska court had the opportunity to observe the demeanor and testimony of both parents before deciding the merits of the habeas corpus proceeding. The Montana court did not have this opportunity prior to the issuance of its April 24, 1972, modification order. Furthermore, the finding by the superior court that misleading testimony was given by Carol Wilsonoff in the Montana hearing is supportive of our conclusion that in this case the Alaska court was in a better position to determine what was in the best interests of these two children.
We find in the case at bar that the superior court did not err in failing to accord full faith and credit to the April 1972 Montana modification order. We do not mean to imply that the custody order of a sister-state should be completely disregarded by an Alaska court, but do emphasize that the paramount consideration for our courts in this setting should be the welfare of the children.[13] Departure from this principle is only justified as a deterrent to child stealing or forum shopping by a litigant,[14] but there is no evidence in the case at bar that either element is present.
The trial court has a wide range of discretion in awarding custody of children, and the determination of the trial court will not be disturbed on review unless there is a clear case of abuse of discretion evident on the record. Sheridan v. Sheridan, 466 P.2d 821, 822 (Alaska 1970). On the basis of the evidence presented, we find no abuse of discretion in this custody award; accordingly, we affirm the decision of the superior court leaving the custody of the children with William Wilsonoff with reasonable rights of visitation accorded to Roxie Wilsonoff.
Affirmed.
NOTES
[1] The factual circumstances and resultant internal family tensions arising from this custody dispute are somewhat unusual. William Wilsonoff married Roxie when she was 13 years old. Two crucial witnesses in the habeas corpus proceeding in Alaska were Dan Wilsonoff, appellee's brother, and Carol Wilsonoff, wife of Dan, and Roxie's mother.
[2] Alaska Civ.R. 86(1) provides as follows:

An order to show cause, and not a writ of habeas corpus, shall be issued initially if the action is brought by a parent, foster parent, or other relative of the child, to obtain custody of the child under the age of sixteen years from a parent, foster parent, or other relative of the child, the Commissioner of Health and Welfare, or any other person.
[3] The six changed circumstances are as follows:

(a) That the Plaintiff, Roxie Wilsonoff, is neither self-supporting nor does she have the present ability to be self-supporting; nor does she have an adequate home in Montana or a promise of support from any other person on whom she can rely for such support; nor is she stable and reliable.
(b) That the Defendant, William Wilsonoff, is a well-settled, stable, and loving father, who has done an adequate job of providing for the minor children during the period of time that they have been in his custody.
(c) That the witness, Carol Wilsonoff, apparently testified to a number of things in the motion proceedings in Montana, peculiarly within her knowledge, in such fashion as to deceive and mislead the Montana court.
(d) That the Plaintiff violated the direct and specific order of the Montana court in that she engaged in a desperate attempt accompanied by force, fury and obscenity, to remove the minor children from the custody of the Defendant upon her arrival in Anchorage ... [without] first going through any court or public officers.
(e) That a portion of the testimony of the Plaintiff in the present proceedings was false, casting doubt upon the balance of her testimony.
(f) That the minor children are lawfully domiciled in the State of Alaska.
(g) That the Defendant, William Wilsonoff, is engaged to be married to a fine, intelligent and respectable person, who has indicated that she understands the circumstances and is fully willing to assist in raising the minor children here involved as the wife of William Wilsonoff.
[4] For a discussion of the doctrine of changed circumstances see King v. King, 477 P.2d 356, 360 (Alaska 1970) (footnote omitted), where we said in part:

The concept of `substantial change' of circumstances is not a limitation on the discretion of the trial court to determine custody according to the best interest of the child. Rather, it may be considered simply a rule of judicial economy designed to discourage discontented parents from continually renewing custody proceedings.
In short, the `substantial change' of circumstances is not an initial obstacle which must be overcome by either party in order to have the court redetermine custody. It is simply one of the factors to be weighed in the balance by the court when a motion for modification of a divorce decree in respect to custody is made.
[5] At the very outset of the custody proceedings and throughout the trial, the court made it clear to counsel and the parties that he considered the full faith and credit doctrine modified by the necessity to determine the best interests of the minor children.
[6] See, e.g., Corkhill v. Cloninger, 153 Mont. 142, 454 P.2d 911, 915 (1969); 2 W. Nelson, Divorce and Annulment §§ 15.37-15.38 (2d ed. 1961).
[7] The domicile of a minor child of divorced parents follows the domicile of the parent in whose custody the child has been legally placed. In re Hughes, 73 Ariz. 97, 237 P.2d 1009, 1010 (1951); McMillin v. McMillin, 114 Colo. 247, 158 P.2d 444, 446 (1945); Berlin v. Berlin, 239 Md. 52, 210 A.2d 380, 381 (1965); 2 W. Nelson, Divorce and Annulment § 15.35, at 299 (2d ed. 1961).
[8] The jurisdiction of the Montana court to enter the April 24, 1972, order was not directly ruled upon by the superior court. While expressly reserving judgment on the issue, we note that the Montana view seems to be that if the litigants were divorced in State A and the first child custody order was entered by that state, then State A has continuing jurisdiction to modify custody. Brandner v. Brandner, 154 Mont. 373, 464 P.2d 508 (1970).
[9] Appellant testified that she intended to live with her natural father in Montana. From the testimony it was apparent to the trial court that appellant's father had failed to support his children as required by a previous divorce decree, being in arrears some $5000 at the time of the habeas corpus proceedings.
[10] AS 09.55.205 provides:

In an action for divorce or for legal separation the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any child of the marriage, make an order for the custody of or visitation with the minor child which may seem necessary or proper and may at any time modify or vacate the order. In awarding custody the court is to be guided by the following considerations:
(1) by what appears to be for the best interests of the child and if the child is of a sufficient age and intelligence to form a preference, the court may consider that preference in determining the question;
(2) as between parents adversely claiming the custody neither parent is entitled to it as of right.
[11] May v. Anderson, 345 U.S. 528, 536, 73 S.Ct. 840, 844, 97 L.Ed. 1221, 1228 (1953) (concurring opinion).
[12] Kovacs v. Brewer, 356 U.S. 604, 613, 78 S.Ct. 963, 969, 2 L.Ed.2d 1008, 1015 (1958) (dissenting opinion).
[13] See, e.g., Anderson v. Anderson, 234 So.2d 722 (Fla.App. 1970); State ex rel. Fox v. Webster, 151 So.2d 14 (Fla.App. 1963), cert. denied, 379 U.S. 822, 85 S.Ct. 45, 13 L.Ed.2d 33 (1964); Avery v. Heermance, 138 So.2d 775 (Fla.App. 1962); People ex rel. Turk v. Turk, Sup., 86 N.Y.S.2d 139 (1949).

In Weber v. Weber, 10 Alaska 214, 220 (1942), the court recognized that its custody order pertaining to a child domiciled in Minnesota would not be binding on a Minnesota court, who "upon application could make such disposition as it sees fit, of the custody of the child."
See also Note, Ford v. Ford: Full Faith and Credit to Child Custody Decrees?, 73 Yale L.J. 134 (1963), wherein it is argued that full faith and credit should be accorded a foreign custody decree only if the foreign state has a superior interest in the child. The author of the Note contends that the state where the child permanently resides would appear to have the most substantial interest in the welfare of the child.
See also Restatement (Second), Conflict of Laws, comment c at 239 (1971) ("the welfare of the child is always the overriding consideration").
[14] For a discussion of the relationship between "unclean hands" and the recognition of a foreign custody decree, see A. Ehrenzweig, Interstate Recognition of Custody Decrees, 51 Mich.L.R. 345 (1953).

Chief Justice Rabinowitz, in his dissent in Fenner v. Bassett, 412 P.2d 318, 324 (Alaska 1966), stated in part:
I am in agreement with the majority's adoption of the underlying public policy doctrine of the Marthens decision [State ex rel. Marthens v. Superior Court, 25 Wash.2d 125, 169 P.2d 626 (1946)]. In litigation involving decrees pertaining to the custody of the children, I believe that generally the paramount consideration of our courts should be that of the welfare of the children. I am of the further opinion that departure from this principle is only justified as a deterrent to child stealing and forum shopping on the part of an unsuccessful parentlitigation. (Footnote omitted.)