Mary Frances DeHART, Appellant,

v.

Larry LAYMAN, Appellee.

No. 2067.

Supreme Court of Alaska.

June 9, 1975.

Edgar Paul Boyko, Edgar Paul Boyko and Associates, Anchorage, for appellant.

Paul A. Williams, Burr, Pease & Kurtz, Inc., Anchorage, for appellee.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, Justices.

## OPINION

CONNOR, Justice.

This is a dispute over child custody which raises questions about the recognition and enforcement of custody decrees of other states.

On August 21, 1972, appellant, Mary DeHart (then Mary Layman), and appellee, Larry Layman, were divorced in Ohio. Mrs. DeHart was awarded weekday custody of their daughter, Luann. Mr. Layman was awarded custody on weekends and holidays. Both parties subsequently remarried, appellant marrying one Donald DeHart, an Alaskan guide, outfitter and rancher. Mrs. DeHart then filed a motion in Ohio for a modification of the custody portion of the Ohio decree, and Mr. Layman cross-filed for the same relief.

Owing to an alleged "breakdown in communications," Mrs. DeHart did not appear at the hearing, although she was represented by counsel. Apparently, evidence concerning the quality of life which the child, Luann, would have in Alaska influenced the Ohio court in its decision to alter the custody decree and to award full custody to the' father, Larry Layman. Since Mrs. DeHart was traveling at the time this change was ordered, she did not learn of the Ohio ruling until arriving in Alaska to take up residence. She brought Luann with her to Alaska.

Upon learning of the Ohio decision, Mrs. DeHart commenced an action in the superior court at Anchorage, seeking a modification of the original Ohio divorce decree. Shortly thereafter, Mr. Layman filed a complaint seeking custody of his daughter pursuant to the modified Ohio decree. These actions were consolidated. Following a hearing in September of 1973, the superior court entered an order enforcing the Ohio decree and awarding custody of Luann to Larry Layman. Mrs. DeHart relinquished custody of her daughter in May of 1974. This appeal follows.

The primary issue raised by this appeal is whether an out of state custody decree should be recognized under the principles of full faith and credit, res judicata or judicial comity. Appellant contends that full faith and credit was given to the foreign decree, without regard for the "best interests" of the child, and in clear violation of Alaskan case law. Appellee claims that the welfare of the child was fully considered and, in light of the facts, the "best interests" of the child were served by granting full faith and credit to the judicial decree of a sister-state.

■ Recognition of foreign custody decrees is a troubled area of the law. United States Supreme Court decisions are inconclusive as to when, if ever, a custody decree of a sister-state must be given full faith and credit. *See* Ford v. Ford, 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962); Kovacs v. Brewer, 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008 (1958); May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97

L.Ed. 1221 (1953); Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947). At best, it can be said that custody decrees do not enjoy the same extraterritorial effect as do unmodifiable judgments. Halvey v. Halvey, *supra*; Restatement (Second) of Conflicts of Laws § 79, comment *c* at 239 (1971). In light of the enigmatic relationship between custody decrees and the full faith and credit clause of the United States Constitution,[1] some courts have applied principles of comity in determining whether recognition should be given to another state's judicial determination. Sampsell v. Superior Court, 32 Cal. 2d 763, 197 P.2d 739, 750 (1948); Weber v. Weber, 10 Alaska 214 (1942), Restatement (Second) of Conflicts of Laws § 79, comment *c* at 239 (1971). The Restatement points out, however, that the welfare of the child is "always the overriding consideration". Thus, courts will ignore full faith and credit or abandon comity where the child's welfare so dictates. But, "[a]s a matter of policy, [prior] decrees will frequently not be reexamined" when the child's best interest does not appear to be jeopardized. Restatement (Second) of Conflicts of Laws § 79, comment *c* at 239 (1971).

Turning to the case at hand, both sides appear to concur in their recognition that Alaska law requires that in all custody cases the "best interests" of the child be given paramount consideration. This is indeed Alaska's position, as reflected in both statutory form[2] and case law.[3] The parties also agree that a strict application of the full faith and credit doctrine to foreign

1. U.S.Const. art. IV, § 1 states:
   "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof."

2. AS 09.55.205 states in pertinent part:
   ". . . In awarding custody the court is to be guided by the following considerations:

   (1) by what appears to be for the best interests of the child and if the child is of a sufficient age and intelligence to form a preference, the court may consider that preference in determining the question;"

3. *See e. g.,* Wilsonoff v. Wilsonoff, 514 P.2d 1264, 1267–68 (Alaska 1973).

custody decrees would undermine the state's paramount concern with the best interests of the child. But at this point the two sides part company.

Appellant contends that the superior court judge enforced the Ohio custody modification because he felt bound by the full faith and credit clause, irrespective of the child's best interests. Appellee argues that an application of the full faith and credit doctrine is in no way antithetical to the child's best interests, and that in this case the doctrine was applied by the trial judge to further those interests.[4]

Appellant relies entirely on the case of Wilsonoff v. Wilsonoff, 514 P.2d 1264 (Alaska 1973), to support her contention that the judge blindly applied full faith and credit without concern for the child's best interests. In *Wilsonoff,* appellant had obtained a modification of a custody decree in Montana, the rendering state. The modification shifted custody from the father, who lived in Alaska, to the mother. The Alaska superior court refused to honor the Montana modification and on appeal we affirmed. After noting that the lower court had found six significant changed circumstances, we stated that "to inflexibly apply the Full Faith and Credit Clause to the instant case would result in a default of our responsibility to ensure the welfare of minor children domiciled in Alaska." *Wilsonoff, supra* at 1267 (footnote omitted).

Appellant argues that *Wilsonoff* "plainly establishes that a decree of custody must be based upon a determination of the best interests of a child without respect to the application of the full faith and credit clause." Appellant then contends that:

"[T]he language employed by the Court convincingly establishes not only that the Court relied on the full faith and credit clause to the exclusion of the consideration of the best interests of Luann Layman, but, even more significantly, that the Court may very well have considered that in the application of the full faith and credit clause, it was rendering *a decision which was actually contrary to the best interests of the child.*"

We find neither contention wholly persuasive.

The *Wilsonoff* case does not hold that a sister state's decree should be ignored in custody matters. In fact, we specifically stated that we did "not mean to imply that the custody order of a sister-state should be completely disregarded by an Alaska court . . . ." *Wilsonoff, supra* at 1268.

■ Ehrenzweig, in his treatise on conflict of laws,[5] notes that several states, New York being perhaps the most forthright, have rejected any application of either full faith and credit or comity as to custody decrees. However, such an extreme position is not only constitutionally suspect,[6] but might work against the best interests of the child by allowing unlimited opportunities for relitigation of the issue. We are sensitive to the harm which can result from potentially endless shuffling of

4. The significance of the full faith and credit doctrine in the superior court's decision is arguably overemphasized by both sides. It is true that the judge states that full faith and credit is the "threshold problem" in the decision. But this is his only reference to the doctrine in three pages of transcript concerning the grounds for his decision. Concerning the uncertain role of full faith and credit in custody decrees, see Ford v. Ford, 371 U.S. 187, 83 S.Ct. 273, 9 L.Ed.2d 240 (1962); Kovacs v. Brewer, 356 U.S. 604, 78 S.Ct. 963, 2 L.Ed.2d 1008 (1958); May v. Anderson, 345 U.S. 528, 73 S.Ct. 840, 97 L.Ed. 1221 (1953); Halvey v. Halvey, 330 U.S. 610, 67

S.Ct. 903, 91 L.Ed. 1221 (1947). *See also* A. Ehrenzweig, Conflict of Laws 287 et seq. (1962); Ehrenzweig, Interstate Recognition of Custody Decrees, 51 Mich.L.Rev. 345 (1953). Only Justice Frankfurter has unequivocally stated that the full faith and credit doctrine is inapplicable to custody decrees, and he has always done so in either concurring or dissenting opinions.

5. A. Ehrenzweig, Conflict of Laws § 87 at 290–91 (1962).

6. The United States Supreme Court has never clearly ruled on the matter. *See* footnote 4 *supra.*

a child between divorced parents. We have recently held that "weight must be given to the findings made at the original hearing and a change in custody should not be ordered lightly." Nichols v. Nichols, 516 P.2d 732, 735 (Alaska 1973); Horton v. Horton, 519 P.2d 1131, 1133 n. 5 (Alaska 1974).[7] Thus, appellant's apparent contention that foreign decrees should be wholly ignored in custody disputes must be rejected.

It is not clear that the trial court's decision ignored the best interests of the child, as appellant contends. The judge listened to extensive testimony on appellant's behalf, disagreed with the parts of the Ohio court's reasoning for modifying the original decree, but concluded that neither parent was better qualified to have custody of the child. By honoring the prior decree, in the absence of a showing that the child's interests would be better served in Alaska, it is possible, though uncertain, that the judge was adopting an approach which we recently endorsed in Nichols v. Nichols, *supra,* 516 P.2d at 736. There Justice Boochever, writing for the court, cited favorably the Wyoming case of Laughton v. Laughton,[8] which held that custody decrees should not be modified unless the welfare of the child would be "improved or better served." [9]

The scope of review in child custody cases is relatively narrow. As we reiterated recently in Horton v. Horton, *supra,* 519 P.2d at 1132,

"It is well established that on appeal our task is to ascertain whether or not the trial court misapplied the broad discretion vested in it in regard to determination of custody questions, and whether the court's findings in respect to custodial issues are clearly erroneous." [10]

In the case at bar, we find it impossible to determine whether Judge Buckalew applied the principles enunciated herein, or whether he affirmed the Ohio decree solely on the grounds of Full Faith and Credit. While the judge did conduct a full evidentiary hearing regarding the welfare of the child, he stated, as part of his oral decision:

"The big threshold problem is whether or not my powers had been qualified by an obligation or duty to give full faith and credit to the Ohio court. . . .

I can't really find any substantial change and I suspect that if I had the authority . . . 1 think that my power is qualified by the Ohio decision, if I could sit up here and do substantial justice as I see it in this case, I'd probably give Mrs. DeHart custody, but I do not think I can ignore what the Ohio court's done. I think I'm bound by—if this federal system means anything. I think I have no—no authority to do anything except to order that Mrs. DeHart comply with the Ohio court and order that she deliver custody of the child to the child's father." [11]

Since the principles which Judge Buckalew relied on in reaching his decision are uncertain, we remand this case for further proceedings consistent with this opinion.

We need not reach certain other arguments advanced by appellee in support of the judgment below.

Reversed and remanded.

---

7. Both *Nichols* and *Horton* concerned modifications of Alaskan decrees and thus are not on "all fours" with this case, which concerns a foreign decree. However, the extended discussion and recognition of the harm which can result from unlimited shuffling of children is equally applicable in reviewing out-of-state orders.

8. 71 Wyo. 506, 259 P.2d 1093 (1953).

9. *Id.* at 1102.

10. *See also* Wilsonoff v. Wilsonoff, 514 P.2d 1264, 1268 (Alaska 1973); Sheridan v. Sheridan, 466 P.2d 821, 824 (Alaska 1970).

11. We note that Judge Buckalew felt that the Ohio court had erred with regard to certain findings it made about the living conditions which Luann would have here in Alaska.