Larry LAYMAN, Appellant,

v.

Mary Frances DeHART, Appellee.

No. 2806.

Supreme Court of Alaska.

March 14, 1977.

Larry R. Meyer, Burr, Pease & Kurtz, Inc., Anchorage, for appellant.

Edgar Paul Boyko, Edgar Paul Boyko & Associates, P.C., Anchorage, for appellee.

Before RABINOWITZ and CONNOR, Justices, and DIMOND, Justice Pro Tem.

OPINION

RABINOWITZ, Justice.

This marks the second occasion upon which this matter has reached this court. The dispute involves a custody battle over the parties' minor daughter. In our first opinion we concluded that the matter should be remanded to the superior court for further proceedings. *DeHart v. Layman*, 536 P.2d 789 (Alaska 1975). The basis of the remand was our conclusion that it was impossible to determine whether the superior court resolved the custody issue by according full faith and credit to the prior custody decree of a sister state without considering the best interests of the parties' minor child. Upon remand the superior court held a further evidentiary hearing at the conclusion of which the court ruled that the best interests of the minor child mandated custody be awarded to the natural mother, appellee Mary DeHart. This appeal followed.

A brief recapitulation of the relevant history of this litigation is necessary at this point. On August 21, 1972, Mary DeHart (then Layman) and appellant Larry Layman were granted a decree of divorce by the Common Pleas Court of Coshocton County, Ohio. The decree provided, in part, that Mary DeHart was to have custody of their minor daughter during the week, on the first weekend of the month and on alternate holidays. Larry Layman was awarded custody of the child at the other times.

Thereafter, Mary married Donald De-Hart, an Alaska guide and outfitter. On March 2, 1973, Mrs. DeHart filed a motion for modification of the Ohio custody order

in the Common Pleas Court.[1] The motion was scheduled for hearing on March 26, 1973. Prior to this date Larry Layman filed a motion for modification of the Ohio custody order requesting "that the Court after hearing the evidence regarding the circumstances as they now exist make a new order regarding custody and/or visitation with regard to the minor child."

On March 26, 1973, both motions came before the Ohio court for hearing. Mrs. DeHart's attorney requested a continuance for the reason that Mrs. DeHart, her husband and the minor child were unable to attend the hearing.[2] The motion was denied and a hearing held at which Larry Layman presented witnesses and evidence and Mrs. DeHart's counsel cross-examined witnesses. At this hearing no claim was advanced that Mrs. DeHart was not a fit parent. On the other hand, considerable testimony was adduced concerning allegedly primitive living conditions in Gakona, Alaska, and the problems engendered by the DeHarts' proposed living arrangements under which they planned to reside in Gakona from the first of October to the first of April and from April 1 to the end of September in Cheyenne, Wyoming. On April 5, 1973, the Ohio court entered a memorandum opinion granting custody of the minor child to Larry Layman with reasonable visitation during the summer months to Mary DeHart.

After Mrs. DeHart arrived in Alaska, she filed a complaint in the Superior Court of Alaska in which she sought to modify the custody decree "so that she may have custody in Alaska." Shortly thereafter, Larry Layman filed a complaint in the Superior Court of Alaska in which he asked that the court enforce the child custody judgment of the Ohio court. The cases were consolidated and an evidentiary hearing held at which both parties appeared.[3] After hearing testimony from the parties, the superior court entered a decision enforcing the Ohio child custody decree.

As we indicated at the outset, the superior court's decision was appealed to this court and in *DeHart v. Layman*, 536 P.2d 789 (Alaska 1975), we reversed and remanded the matter for further proceedings. On remand a further evidentiary hearing was held. However, Mr. Layman did not return to Alaska or respond to the superior court's order to produce the child.[4] In awarding custody to Mrs. DeHart, the superior court granted visitation rights to Mr. Layman of alternate Christmas holidays and up to 30 days in the summer months.

In this appeal appellant advances two primary arguments, namely, that the trial court erred in awarding custody to Mrs. DeHart without making any finding that there had been a change in circumstances, and further that the superior court erred in its application of the "best interests" test.

In *Wilsonoff v. Wilsonoff*, 514 P.2d 1264 (Alaska 1973), we determined that although a sister state's decree should not be ignored in custody matters, strict application of the full faith and credit clause "would result in a default of [the court's] responsibility to

1. By her motion Mary DeHart sought that she be granted custody of the child . . to live with [her] at [her] place of residence outside Ohio and such further order respecting visitation of [Mr. Layman] with said child as the court deems proper in the best interest of the child.

2. Mrs. DeHart's Ohio attorney explained that the DeHarts and the minor child had left Ohio in early March on business and had been unable to return for the hearing. The court denied the continuance, stating:

    [T]he court isn't going to wait until it fits the schedule of [Mrs. DeHart] to be here. First of all, it seems in bad faith on her part in making the necessary arrangements. There is no request on her part to leave the state with the child.

3. Mrs. DeHart explained that her absence at the Ohio hearing was due to a lack of communication with her attorney and his assurance that the movant would be granted a continuance routinely. She explained that she did not know that Mr. Layman had filed a cross-motion.

4. At this second hearing before the superior court, Mr. Layman presented testimony by way of deposition.

ensure the welfare of minor children domiciled in Alaska."[5]

Appellant's position is that the effect to be given to the foreign custody decree under Alaska law can be summarized as follows:

A foreign custody decree will not automatically and mechanically be given full faith and credit, but a change in decree will not be ordered in the absence of a strong showing of important new circumstances, not previously considered by the prior court, which mandate that a change be ordered to protect the child's best interests.[6]

■ We believe appellant has misinterpreted our decisions in the *King, Nichols* and *DeHart* cases. None of these cases stands for the proposition that a foreign custody decree can be modified only on a showing of changed circumstances. As stated in *DeHart*, "We are sensitive to the harm which can result from potentially endless shuffling of a child between divorced parents."[7] Nevertheless, in determining what custody disposition is in the best interests of a minor child, it was stated in *Wilsonoff* that this court did "not mean to imply that the custody order of a sister-state should be completely disregarded by an Alaskan court . . . ."[8] What Alaska law does require is that the custody decree of a sister state be considered a significant factor by the courts of Alaska in determining whether or not the foreign custody decree should be modified.[9] Thus, we reject appellant's contention that the superior court erred in awarding custody to Mrs. DeHart in the absence of a finding that there had been a change in circumstances since the entry of the modified Ohio custody decree.[10]

■ We next turn to appellant's contention that the superior court erred in modifying custody without making a determination that the minor child's best interests would be better served by the modification. Our standard of review in custody cases is that of "abuse of discretion."[11] Findings of fact are reviewed against a

5. *Wilsonoff v. Wilsonoff*, 514 P.2d 1264, 1267 (Alaska 1973). In *Wilsonoff*, we adopted the position espoused by Mr. Justice Frankfurter in his concurring opinion in *May v. Anderson*, 345 U.S. 528, 536, 73 S.Ct. 840, 844, 97 L.Ed. 1221, 1228 (1953), where he wrote:
   [T]he child's welfare in a custody case has such a claim upon the State that its responsibility is obviously not to be foreclosed by a prior adjudication reflecting another State's discharge of its responsibility at another time.
   See also *Kovacs v. Brewer*, 356 U.S. 604, 612, 78 S.Ct. 963, 2 L.Ed.2d 1008, 1014–15 (Frankfurter, J., dissenting).

6. Appellant arrives at his statement of Alaska law through analysis of *King v. King*, 477 P.2d 356 (Alaska 1970); *Nichols v. Nichols*, 516 P.2d 732 (Alaska 1973), and *DeHart v. Layman*, 536 P.2d 789 (Alaska 1975).

7. *DeHart v. Layman*, 536 P.2d 789, 791–92 (Alaska 1975).

8. *Wilsonoff v. Wilsonoff*, 514 P.2d 1264, 1268 (Alaska 1973).

9. See *DeHart v. Layman*, 536 P.2d 789, 792 (Alaska 1975).

10. We note that this case does not involve forum shopping, child-stealing or relitigation of foreign decrees. Mrs. DeHart did not "snatch" the child; the only violation of the Ohio decree concerned Mr. Layman's weekend custody. Further, from the inception of this litigation in Alaska, Alaska was the minor child's bona fide home and was not chosen for purposes of litigation. With respect to relitigation of foreign decrees, it appears that the Ohio court in the modification hearing was not presented all of the facts or an accurate picture of the child's home in Alaska. Given the foregoing, much of the Alaska hearings were not addressed to "relitigation," but rather to conditions with respect to which the Ohio court was either not informed or misinformed. *Compare* Ratner, *Child Custody in a Federal System*, 62 Mich.L. Rev. 795, 836–37 (1964).

11. *Horutz v. Horutz*, 560 P.2d 397 (Alaska 1977); *DeHart v. Layman*, 536 P.2d 789, 792 (Alaska 1975); *Horton v. Horton*, 519 P.2d 1131, 1132 (Alaska 1974); *Wilsonoff v. Wilsonoff*, 514 P.2d 1264, 1268 (Alaska 1973); *Sheridan v. Sheridan*, 466 P.2d 821, 824 (Alaska 1970).

"clearly erroneous" criterion.[12] Review of the entire record under the foregoing standards has persuaded us that the superior court's findings are adequately supported by evidence, are not clearly erroneous, and that the superior court did not abuse its discretion in awarding custody to the mother of the minor child.

In its decision the superior court found in part that:

> The difficult determination is the question of where should the child be placed considering her best interests. Mr. Layman invoked the assistance of this court and for reasons known only, perhaps, to Mr. Layman he did not appear or produce the child and at the second hearing there was some paucity of evidence offered by Mr. Layman. This court has carefully considered the affidavits and exhibits offered by Mr. Layman. In considering the question of custody I have given weight, certainly, to the Ohio decree. I've also considered the fact that the present Mrs. DeHart is much younger than her husband Donald DeHart. I also appreciate that perhaps some time from now she might very well be in the full bloom of her womanhood and her husband might very well be approaching senility. Mrs. DeHart is a well educated woman with obvious talents whose sole occupation is that of a housewife. Mr. Layman is well educated, holds a responsible position in the school system in his community and certainly has a father's concern for his daughter. The evidence is undisputed that he is a busy man. The evidence is also undisputed that when these parties were living together his outside job and activities afforded little opportunity to be with his daughter. He has acquired a new wife, a stepdaughter a year or so older than Luann and established a new family unit. I noted in the Ohio opinion that the judge might very well have thought that Mrs. DeHart's taking the child to the DeHart ranch might suggest a lack of concern for the child's welfare because of the remote, primitive—and questionable water. The judge was also concerned about a higher incidence of respiratory infections in this area as opposed to Coshocton County.[13]

With respect to the parents, the superior court further noted:

> This court has had the opportunity to observe both Mr. Layman and Mary Frances DeHart. I find that (1) Mr. Layman, certainly—he can have an interest in this child but this court is convinced that Mary Frances has a deep love, she cherishes the child and this court is satisfied that she would undertake any burden to assure Luann a full and happy life. For that reason custody shall be awarded to Mary Frances DeHart . . . and Mr. Layman, the father, shall have visitation rights. . . .

From the foregoing we are persuaded that the superior court was fully cognizant

---

**12.** *Horton v. Horton*, 519 P.2d 1131, 1132 (Alaska 1974).

**13.** With respect to the parties' homes, the court further found that:

> All in all in spite of [the Alaska home's] remote location it affords a more than modest home by our standards. It's also obvious to this court that Coshocton County located in the state of Ohio is in the heartland of this country, contains excellent schools, medical facilities and in every regard certainly a more than adequate community to raise a small child in. As between the 2 locations this court finds that both Warsaw, Ohio and the DeHart ranch have much to offer as a location for a home to raise children. This court is of the opinion and decides that geography in this case is really irrelevant.

The superior court also found that the minor child's medical problem could be adequately treated in either location. The minor child has had problems with a liver condition, nephrosis, which is presently in remission; however, for unknown reasons, it could recur at any time. Testimony was introduced to the effect that a recurrence of nephrosis is a gradual process so that the remoteness of the DeHart ranch would present no problems. Adequate treatment facilities are located in Anchorage, 350 miles from Gakona, and Columbus, 80 miles from Warsaw, Ohio. Although the child was not on medication for the condition at the time of the hearing, a daily urine check for protein content was required.

that the appropriate standard to be applied in resolving the child custody issue was that of the best interests of the minor child. Further, the superior court's decision is reflective of the consideration it gave to many factors. Thus, we conclude that the superior court's determination that it was in the child's best interest to award custody to Mrs. DeHart should be affirmed.[14]

Affirmed.

BOOCHEVER, C. J., and BURKE, J., not participating.

14. Of significance to the superior court's decision was the fact that Mr. Layman was a "busy man" whose outside "activities provided little opportunity to be with his daughter."