Argued February 1, affirmed February 20, petition for rehearing denied March 29, petition for review denied June 12, 1973

In the Matter of Riley, Baby Boy, a Minor Child.

STATE ex rel JUVENILE DEPARTMENT OF MULTNOMAH COUNTY et al, *Respondents, v.* ARCHULETTA (No. 35,106), *Appellant.*

506 P2d 540

*William J. Keys,* Portland, argued the cause and filed the brief for appellant.

*Harvey W. Keller,* Portland, argued the cause for respondents. With him on the brief were Desmond D. Connall, District Attorney, and Gary W. Gleason, Deputy District Attorney, Portland.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

LANGTRY, J.

This is an appeal, by the 25-year-old mother of a child born to her June 7, 1968, from an order which terminated her parental rights to that child. The child was born out of wedlock, was a ward of the juvenile court prior to the instant petition, and has been in welfare foster home placement virtually all of the time since birth.

The instant petition, dated November 11, 1971, seeking termination of parental rights alleged that the mother since 1966 had been convicted 18 times of offenses ranging through larceny, assault and prostitution; that the mother did not regularly visit the child and had no immediate plan for its care; and that she is addicted to heroin and is on the methadone program. Evidence produced at the hearing supported all of the above allegations.

At the time of hearing the mother was seeking a delay in order to have time to demonstrate her stability; however, she was not scheduled for release from jail for at least five months.

Five assignments of error are made. We have reviewed them in light of the record and with one exception find that they are without merit or raise questions already decided adversely to the mother's contentions by this or the Oregon Supreme Court.

The one assignment meriting discussion is that the mother urges that the court should have given her time and an opportunity to demonstrate her fitness as a parent. The first and foremost precedent the mother

cites in support of her position is *State v. Grady*, 231 Or 65, 371 P2d 68 (1962). *Grady* is a department case in which the Oregon Supreme Court reversed a termination of parental rights order in a situation where the mother was serving a five-year sentence. In *Grady* the court stressed the rehabilitative effect the child might have on the mother after her prison term was completed but did not discuss what was in the best interests of the child.[①] The court said:

> "* * * [T]here is evidence which justifies hope that the defendant mother may later be able to adequately resume her maternal duties to this very young little girl * * *." 231 Or at 68-69.

In the case at bar, the trial judge had substantial evidence upon which to base her conclusion that the mother could not be expected to care for her child in the future. One point in this regard was that the mother had utterly failed in a program designed to lead to her care for the child which was set up in 1969 by the Children's Services Division of welfare. An-

---

[①] State v. Grady, supra, has been criticized for reasons besides its failure to consider the best interests of the child. In language which appears to be part of the reason for arriving at its decision the court said:

> "We know that an incarceration does not legally effectuate a parental abandonment of a child so as to waive the necessity for a consent to a proposed adoption [citing authorities] * * *." 231 Or at 67.

This pronouncement did not cite or consider the statutory law of Oregon then and now in effect:

> ORS 109.322. "If either parent * * * is imprisoned * * * under a sentence for a term of not less than three years * * * the consent of the * * * imprisoned parent is not required [for adoption] * * *."

See also, criticism of the *Grady* decision in Larsen, *Trends in Oregon Family Law*, 43 Or L Rev 193, 208, 209 (1964), which we quoted in State v. Blum, 1 Or App 409, 414 n 2, 463 P2d 367 (1970).

other was that Dr. Morrison, child psychiatrist and director of the Morrison Center for children, who had examined the mother in 1960 when she was 12 years old and again in 1972, testified positively that the mother has a strong tendency toward a sociopathic personality, that there is little likelihood she can change her pattern of living, that she would "be unable to care for her child or for any other child" and "* * * it would be seriously detrimental to the child's development" to place him with the mother.

If *Grady* pronounces any principle of law applicable to Oregon child-care cases, it is, for reasons inherent in the above discussion of the evidence, distinguishable from the case at bar.

The principles stated in *State ex rel Juv. Dept. v. Patton*, 5 Or App 450, 485 P2d 653 (1971), and *State v. Blum*, 1 Or App 409, 463 P2d 367 (1970), are applicable.

Affirmed.