Argued September 20, affirmed October 7, 1974

In the Matter of Dee, Lisa, Minor Child.
STATE ex rel JUVENILE DEPARTMENT OF
MULTNOMAH COUNTY, *Respondent, v.*
DEE (No. 33,532), *Appellant.*
526 P2d 1036

*Ira L. Gottlieb,* Portland, argued the cause and filed the brief for appellant.

*Betsy Welch,* Senior Deputy District Attorney,

Portland, argued the cause for respondent. With her on the brief was Harl Haas, District Attorney, Portland.

Before Langtry, Presiding Judge, and Foley and Fort, Judges.

LANGTRY, P. J.

This appeal is by the father of a child from an adverse judgment in a termination of parental rights and permanent commitment proceeding. ORS 419.523 and 419.525. ORS 419.523 (2) provides that a parent's rights may be terminated if he is found to be "unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent * * * is improbable in the forseeable [sic] future due to conduct or conditions not likely to change * * *." The court's finding was within this provision, which was the statutory basis for the dependency petition upon which the proceeding was predicated. The court also found that "there was a willful, deliberate, volitional abandonment * * *" of the child by the father.

■ The detailed finding of the court in this case falls under ORS 419.523 (2) (e) in which it is directed that "the court shall consider but is not limited to * * *" an appraisal of the parent's "[l]ack of effort * * * to adjust his circumstances, conduct, or conditions to make the return of the child possible *or* failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected." (Emphasis supplied.) The father is serving a long sentence in the

Oregon State Penitentiary, although he is eligible for parole at the present time and the prospects appear good for him to obtain some kind of work release parole in the near future. He is now 40 years of age, has been convicted of 14 offenses and has spent 11 of the past 22 years in prison. He has been addicted to the use of heroin and was described by a psychologist witness as having an addictive type of personality.

The child is 10 years old and the father has not seen her since 1967. The mother's parental rights were terminated in 1973 after she had failed to care for the child who has been in foster homes since 1967. The child is described as still adoptable. The father contends that juvenile and welfare caseworkers have not advised him of his right to visitation and related rights, and that he is entitled to such notice before his neglect of his parental duties can form the basis for termination of parental rights.

The father appears to blame the social workers for much of his inattention to parental duties. However, we note that the prison records indicate he requested visitation with older children by a previous wife but made no request for visitation with the child subject of this petition. Under these circumstances we find it difficult to believe that he did not know he could make request to the welfare department concerning visitation and also for information about the welfare of his child. From his testimony it appears that he was aware the child was under welfare care much of the time. No such request was made over a period of six or seven years. Through much of that time the record indicates the welfare and juvenile court caseworkers had no idea of the father's location, which had actually been in a number of different places including prisons,

a drug rehabilitative center, and two or three periods when he was out of detention and living in Multnomah County, the same place where the child was.

■ The first alternative under ORS 419.523 (2) (e), quoted supra, that is, "[l]ack of effort [by the father] * * * to adjust his circumstances, conduct, or conditions to make the return of the child possible * * *," is sufficient upon which to base the court's judgment here. However, the father is contending, apparently, that both alternatives must be considered. We do not agree, but even if that were so, it would not improve the father's position in this case. "* * * [R]easonable efforts by available social agencies * * *" "to effect a lasting adjustment * * *" in the parent (ORS 419.523 (2) (e)) cannot be attempted where the parent is not to be found, or if by his conduct he places himself in prison, beyond the reach of reasonable efforts. In *State ex rel Juv. Dept. v. Mack,* 12 Or App 570, 573, 507 P2d 1161 (1973), we said, "* * * [S]ignificant is whether the parents have attempted to maintain contact with the children and have concerned themselves over their welfare * * *." In *State ex rel Juv. Dept. v. Draper,* 7 Or App 497, 508, 491 P2d 215 (1971), Sup Ct *review denied* (1972), we said, "* * * [T]he father knowing only that his child was in the custody of the welfare commission, and nothing more, deliberately chose to ignore her, totally and completely, until if and when it suited his convenience and desires to do otherwise." This was considered cause for termination of parental rights.

At bar, the father is not offering planning now which appears likely to repair the damage of the past and to assure the possibility of future secure plans for the child. Dr. Rex M. Newton, a psychologist who

has worked with the father in the penitentiary, when asked about the possibility of the father's providing the child "with parenting within the foreseeable future" testified:

> "Well, I wouldn't speculate about the future. I don't know how long into the future you are talking about, but my observations of Mr. Dee in regards to this child, No. 1, I don't question his love for his child or his commitment to his child. I think it is very sincere, and very deep.
>
> "The question I think you are asking is the ability to maintain that day-to-day household that is necessary for a child that is growing and developing; and as I said earlier, he is going to have to have some help in developing those skills. In the meantime I am not sure that he has those skills, but that is not saying that he is not going to be able to develop them.
>
> "When you speculate in talking about the future, it becomes very, very fuzzy — very vague."

We must question "sincere" and "deep" love, and "commitment" to the child where the father last saw her at the age of three and then let six years go by with no attempt at contact. But we agree that we would be speculating on a "fuzzy" and "vague" future to save this child for the uncertainties of this father's custody of her.

Under the state of the record and evidence before us, we consider *State ex rel Juv. Dept. v. Archuletta,* 12 Or App 596, 506 P2d 540 (1973), where the facts were similar, to be persuasive, if not controlling. There, we approved termination of parental rights.

We note from the father's testimony that at least one of his older children has displayed violent and unlawful conduct. We think it remarkable that the

10-year-old child who is the subject of this proceeding has been able to find the kind of security which leads the caseworkers to say she is still able to adjust to an adoptive home. We think it is high time that she be given that opportunity. *See State v. Blum,* 1 Or App 409, 463 P2d 367 (1970).

Affirmed.