535 P.2d 112 (1975)
In the matter of the Dissolution of the Marriage of Florence R. McClure, Respondent, and
John S. McClure, Appellant.
Court of Appeals of Oregon.
Argued and Submitted April 22, 1975.
Decided May 19, 1975.
Rehearing Denied July 9, 1975.
Review Denied August 6, 1975.
*113 James C. Farrell, Roseburg, argued the cause for appellant. With him on the brief were Farrell & Spence, Roseburg.
William H. Ferguson, Medford, argued the cause for respondent. With him on the brief were Grant, Ferguson & Carter, Medford.
Before SCHWAB, C.J., and LANGTRY and THORNTON, JJ.
LANGTRY, Judge.
Father appeals from the court's order with reference to two motions simultaneously heard for modification of the marriage-dissolution decree. The original decree was appealed by the father and heard by this court. McClure and McClure, 16 Or. App. 680, 519 P.2d 1275 (1974). After hearing the current motions, one for an increase in children's support, the other for a change of custody from mother to father, the court entered an order reaffirming the decree as it was modified in accordance with the mandate pursuant to the appeal and allowed mother recovery of $1,200 on account of attorney fees. The order thus made had the effect of denying both motions, leaving the custody of the children with mother and the amount of the support at $125 per month for each child.
No appeal has been taken from the denial of the support motion. Extensive testimony was taken on the change of custody motion. The children are a boy almost eight years of age and a girl almost five. They were in the actual custody of the mother for several months from the filing of the original petition for dissolution in June 1972 until the mother suffered a "psychotic break" diagnosed as a paranoid schizophrenic episode. When she realized she was in this trouble, she took the children from where she was living in Eugene to her former husband's home in Glide, some 30 miles east of Roseburg, and left them with him and his new wife. Her mother came from the Chicago area and took her to Illinois where she was hospitalized for several weeks.
The medical evidence was testimony of a psychiatrist who had examined her twice, talked with her treating psychiatrist in Illinois, and conferred with colleagues about her case. He testified that mother made a remarkably good recovery from her illness. The prognosis for her is good because she has had no previous similar difficulty. There is no apparent family history of psychosis. She was reacting when her break occurred to a "multitude of stresses which hopefully would not happen again * * *," she has good understanding of her problems, and she slipped into the psychosis slowly and if she had had adequate treatment at the early stages it would not have gotten to the severe stage it did. *114 Her quick response to the medication administered to her is another favorable sign.
After leaving hospitalization in Illinois mother worked there for several months to accumulate sufficient funds to come back to Oregon. Once returned she made contact with the children. At the time of her second visit to father's home where the children were, she was confronted with an ex parte change of custody order which father had obtained from circuit court pending hearing on a show cause motion which he had filed for formal change of custody. She had not been served in the matter and the upshot was that the motion was withdrawn and a new one filed. Concurrent with the new filing the court vacated the ex parte order, leaving mother free to take the children, which she did. She removed them to her sister's home in the San Juan Islands of Puget Sound. She continues to live in that area where she is maintaining her own home with the children and holds two part-time jobs. She is receiving substantial moral and other material support from family and friends there.
Father's new wife is apparently a strong person who gave good care to the children while they were in father's home. When father received their de facto custody, the children were distraught and their recent physical care had obviously been deplorable. Father seems largely content to live upon income from his trust funds although he testified that he had prospects of getting a job which would pay as much as $250 per month. Father and mother both apparently have left the hippie subculture in which they formerly had participated.
Father contends that the trial court gave undue weight to its feelings of sympathy concerning mother's mental illness and recovery therefrom. In his brief he quotes the trial court:
"* * * Am I going to penalize her for her mental illness * * *?
"* * *
"It is my feeling that to change custody to John McClure would be in effect penalizing his former wife for her illness when she showed some sign of strength by going to her husband and getting help. I think she should be praised rather than punished, and I guess that is basically a lot of what my decision is based on."
Mother's brief justifiably points out that this quotation leaves out other important things the trial judge said:
"* * * Am I going to penalize her for her mental illness, which she has recovered from, and take the children away from her and give them to the father?
"I think the law is clear, both Counsel, you don't simply change custody because one parent apparently has improved his situation * * *."
Our perusal of the record leads us to believe that at the present time father and mother offer the children relatively equal amounts of those factors which we say should be considered when custody is determined. See Tingen v. Tingen, 251 Or. 458, 446 P.2d 185 (1968).[1] Under the applicable rules this belief points to leaving the children where they are. Further, in their short lives these *115 children have been moved from mother and father living together to mother living alone, from mother to father living with a new wife, and then from father and his new wife to mother living alone. Regardless of why this has happened, it is past time to stop it if possible. In Ellenwood and Ellenwood, Or. App., 75 Adv.Sh. 791, 794, n 1, 532 P.2d 259 (1975), we quoted from Goldstein, Freud, Solnit, Beyond the Best Interests of the Child 33 (1973):
"* * * Where continuity of such relationships is interrupted more than once, as happens due to multiple placements in the early years, the children's emotional attachments become increasingly shallow and indiscriminate. They tend to grow up as persons who lack warmth in their contacts with fellow beings.
"For young children under the age of 5 years, every disruption of continuity also affects those achievements which are rooted and develop in the intimate interchange with a stable parent figure, who is in the process of becoming the psychological parent. The more recently the achievement has been acquired, the easier it is for the child to lose it. Examples of this are cleanliness and speech. After separation from the familiar mother, young children are known to have breakdowns in toilet training and to lose or lessen their ability to communicate verbally." (Footnote omitted.)
The evidence we have read in the case at bar indicates that the children each demonstrated one of the difficulties mentioned in this quotation at least at the time of the de facto change of custody.
We draw the same conclusions from the evidence that the trial judge did. After balancing the relevant factors and giving emphasis to those that appear to deserve it the most, we conclude that the best interests of the children will be served by the least detrimental alternative of continuing their custody in the mother.
Affirmed.
NOTES
[1] determining the best interests of a child in a custody dispute the court ought to consider all the relevant factors. These, as we see them, would generally include: (1) the conduct of the parties; (2) the moral, emotional and physical fitness of the parties; (3) the comparative physical environments; (4) the emotional ties of the child to other family members; (5) the interest of the parties in, and attitude toward, the child; (6) the age, sex and health of the child; (7) the desirability of continuing an existing relationship and environment; and (8) the preference of the child.
"Best interest in custody matters should not be determined by isolating one of these variable factors and relying on it to the exclusion of other factors. Rather, best interest should be determined upon these, and other, relevant factors by a weighing and balancing process, and not by treating any one of them as a fixed rule or standard." Tingen v. Tingen, 251 Or. 458, 459-60, 446 P.2d 185 (1968).