Argued September 16, 1975, reargued January 20, affirmed March 8, reconsideration denied April 14, petition for review denied May 11, 1976

In the Matter of D., Minor Child
F. and F., *Respondents,*
*v.*
C., *Appellant.*
(No. A-23879, CA 4519)
547 P2d 175

*Diane Spies,* Portland, argued the cause and filed the brief for appellant.

*Ira L. Gottlieb,* Portland, argued the cause for respondents. With him on the brief was Harvey W. Keller, Portland.

*David L. Slader,* Child Advocacy Project for the Metropolitan Public Defender, Portland, filed briefs amicus curiae.

LANGTRY, J.

**LANGTRY, J.**

This is a father's appeal from a decree of the circuit court terminating his parental rights and allowing the adoption of his son by the child's maternal grandfather and stepgrandmother.

Father and mother were married on June 26, 1970; their son—the child involved in this proceeding—was born October 6 of that same year. Following his discharge from the Marine Corps in February of 1971 father and mother began experiencing domestic difficulties which became increasingly severe during the subsequent year when, due to father's failure to maintain steady employment, they were compelled to call upon their families for financial assistance. In the fall of 1972 mother ultimately filed suit for dissolution of the marriage and moved from Portland to Bend where, with the aid of a brother, she hoped to establish a more stable lifestyle for herself and her son. During the pendency of the dissolution suit father made some efforts to effect a reconciliation which culminated in his traveling to Bend on December 21, 1972. His confrontation with mother on that date resulted in her homicide; father was thereafter convicted in the circuit court of manslaughter (ORS 163.125) and began serving a ten-year sentence at the Oregon State Correctional Institution in May of 1973.[1]

Immediately following the death of mother, her parents (petitioners) took the child involved into their home. An order temporarily committing him to their custody was issued by the Deschutes County juvenile court on December 26, 1972 as a consequence of the filing of a petition alleging that he was within the court's jurisdiction. ORS 419.476. On May 15, 1973— following father's conviction in circuit court—a second order was entered temporarily committing the child to

---

[1] As a result of the circumstances surrounding his wife's death father was also prosecuted and convicted in United States District Court of possession of a sawed-off shotgun; a five-year sentence imposed by that court is to run concurrently with the state sentence.

the Children's Services Division; incorporated into that commitment order was a recommendation that the petitioners continue to maintain physical custody of the child pending a final placement.[2] Pursuant to that order and recommendation the child has remained in the petitioners' home continuously to this date.

On January 18, 1974 petitioners filed a petition pursuant to the terms of ORS 109.310, asserting that the child had been in their sole custody for more than a year and that they desired to adopt him. On motion of the district attorney the circuit court thereafter ordered the consolidation of the adoption proceeding and the still pending juvenile court matter (see note 2), both of which were found to involve "much the same issue and circumstances." ORS 419.559. Testimony was eventually taken during the summer of 1974, with the deposition of an important out-of-state witness finally being received into evidence in January of 1975. As authorized by the terms of ORS 109.310(3) and (4), the Children's Services Division filed with the court a report incorporating "information regarding the status of the child and evidence as to the suitability of the proposed foster [adoptive] home * * *." Although the Division's report included the recommendation that petitioners' petition for adoption be denied,[3] the court concluded, after considering the

---

[2] At the time the order was issued the child's paternal grandparents— father's parents—had also filed a request for custody. The court specifically noted that its recommendation of continued placement with petitioners was not to be construed as indicating that it had found the paternal grandparents to be "inappropriate custodians," and provided that:

"A hearing shall be had upon a setting by either [party's] counsel * * * in September at the earliest or latest, not later than October 15 but sometime in the course of this year at which time there is no burden of going forward on the part of either the [paternal grandparents] or the [petitioners] but at which they are to appear with equal claims as far as adjudication is concerned * * *."

As a consequence of the failure of either the petitioners or paternal grandparents to initiate further proceedings, no additional hearings were held on the matter by the juvenile court during the balance of the year.

[3] Conceding that petitioners seemed to be providing the child with adquate care, the Division declined to recommend the granting of their

alternative of a placement through the Division into an "unrelated" adoptive family, that the interests of the child would be best served by permanent placement in the "stable and secure" family environment which the petitioners were providing; the decree from which this appeal has been taken was accordingly entered on March 12, 1975.

■ In addition to contending that the evidence presented below was insufficient either to establish that petitioners are "fit and proper"[4] adoptive parents or to warrant the termination of his parental rights,[5] father has raised two important questions for this court's consideration: (1) Did the "subject" of the proceeding—the child—have a constitutional right to "independent legal representation" which the circuit court improperly refused to recognize? (2) Is ORS 109.322, providing in relevant part that an adoption may be granted, over the objection of a natural parent imprisoned under a sentence of not less than three years, where it will "best promote" the welfare of the child, unconstitutionally vague and does it deprive imprisoned parents of the due process and equal protection to which they are constitutionally entitled?

---

petition for the reason that, considering father's opposition, it would be likely that he would become involved with the child "at some point in the future which will be detrimental to his [the child's] well being * * *." The Division did suggest that the child be placed in a secure setting where he could grow up without "the conflict and interference of extended families."

[4]"If, upon a petition for adoption duly presented and consented to, the court is satisfied * * * that the petitioner is of sufficient ability to bring up the child and furnish suitable nurture and education, having reference to the degree and condition of the parents, and that it is fit and proper that such adoption be effected, a decree shall be made setting forth the facts, and ordering that from the date of the decree the child, to all legal intents and purposes, is the child of the petitioner." ORS 109.350.

[5]Although a proceeding initiated in accordance with the terms of ORS 109.305 through 109.400 is not specifically designed as a means of effecting the termination of parental rights—see ORS 419.523 through 419.529—termination is a necessary consequence of the granting of an adoption over the objection of a natural parent. *Moody v. Voorhies,* 257 Or 105, 475 P2d 579 (1970). The decree of the court below provided both that the petition for adoption would be allowed and that the father's parental rights would be terminated.

Shortly after the hearings below had been completed father filed with the court a motion for an order dismissing the proceedings, or in the alternative for a mistrial, on the ground that his son had not been and was not then "independently represented by counsel." Relying upon this court's opinion in *State ex rel Juv. Dept. v. Wade,* 19 Or App 314, 527 P2d 753, 19 Or App 835, 528 P2d 1382 (1974), Sup Ct *review denied, appeal dismissed,* 423 US 806 (1975), father argues that the denial of this motion constituted reversible error.

Holding in *Wade* that where a proceeding may result in the severing of a parent-child relationship the child involved possesses an interest "worthy of all the protection afforded the interests of [the] parents * * *" (19 Or App at 319), we concluded that a child may not be deprived of his or her interest in that relationship without due process.[6] In light of the fact that the Oregon Supreme Court had previously characterized legal representation as an integral part of the "due process" to which parties involved in a "termination proceeding"—ORS 419.523 through 419.527—were entitled,[7] we then concluded that due to potential

[6]"* * * The basic human right to maintain and enjoy the relationship which normally exists between the parents and the children is held no less by the children than by the parents. When the United States Supreme Court ruled this right to be subject to constitutional protection—*Griswold v. Connecticut,* 381 US 479, 85 S Ct 1678, 14 L Ed 2d 510 (1965); *May v. Anderson,* 345 US 528, 73 S Ct 840, 97 L Ed 1221 (1953); *Prince v. Massachusetts,* 321 US 158, 64 S Ct 438, 88 L Ed 645 (1944); *Skinner v. Oklahoma,* 316 US 535, 62 S Ct 1110, 86 L Ed 1655 (1942); *Meyer v. Nebraska,* 262 US 390, 43 S Ct 625, 67 L Ed 1042, 29 ALR 1446 (1923)—it necessarily guaranteed that neither parents nor children shall be deprived of it without due process. *In Re Winship,* 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970); *Tinker v. Des Moines School Dist.,* 393 US 503, 89 S Ct 733, 21 L Ed 2d 731 (1969); *In Re Gault,* 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967); *Haley v. Ohio,* 332 US 596, 68 S Ct 302, 92 L Ed 224 (1948)." *State ex rel Juv. Dept. v. Wade,* 19 Or App 314, 319, 527 P2d 753, 19 Or App 835, 528 P2d 1382 (1974), Sup Ct *review denied, appeal dismissed,* 423 US 806 (1975).

[7]"The permanent termination of parental rights is one of the most drastic actions the state can take against its inhabitants. It would be unconscionable for the state forever to terminate the parental rights of the

conflicts of interests existing among all three of the necessary parties—parent, child and state—"independent" counsel responsible for representing the child was required in every termination case. As pointed out in *State ex rel Juv. Dept. v. Gonzalez,* 21 Or App 103, 533 P2d 1382, Sup Ct *review denied* (1975):

> "* * * [O]ur decision in *Wade* was predicated upon a concern that the welfare of children may require, in certain circumstances, separate representation in termination proceedings, and, since such circumstances may not be known or may not exist in advance of the proceedings, the children should be represented by counsel in all proceedings." 21 Or App at 106.

Father contends, and we agree, that no valid distinction may be made between the proceeding at bar—a "Chapter 109" adoption proceeding—and an action for the termination of parental rights—ORS 419.523 through 419.527—which would warrant the application of a different rule with respect to the protection of the rights of the children involved. We have nonetheless concluded that the denial of father's motion for dismissal or mistrial was not error. We are persuaded that the rule set forth in *Wade* is needlessly inflexible and has in application failed to serve the purposes for which it was designed; we are now satisfied that due process does not, in fact, require the presence of independent counsel in every case and that the implementation of a rule to that effect will, in many cases, fail to enhance the protection of the interests of children while unnecessarily complicating proceedings already involving difficult and complicated issues.

Expressing his own views in the case of *In Re Gault,* 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967), Mr. Justice Harlan pointed out that the Supreme Court has repeatedly emphasized that determination of the

---

poor without allowing such parents to be assisted by counsel. Counsel in juvenile court must be made available for parents and children alike when the relationship of parent and child is threatened by the state * * *." *State v. Jamison,* 251 Or 114, 117, 444 P2d 15, 444 P2d 1005 (1968).

procedural safeguards constitutionally required in any given situation requires recognition of both the interests affected and the circumstances involved.[8] Relying upon this rule of general application, Mr. Justice Harlan then concluded that requirements imposed upon state juvenile courts by the Due Process Clause of the Fourteenth Amendment ought to be determined by reference to three "criteria":

> "* * * first, no more restrictions should be imposed than are imperative to assure the proceedings' fundamental fairness; second, the restrictions which are imposed should be those which preserve, so far as possible, the essential elements of the State's purpose; and finally, restrictions should be chosen which will later permit the orderly selection of any additional protections which may ultimately prove necessary * * *." 387 US at 72.

Developments since *Wade* have served to convince us that a rule requiring independent counsel in every case where the possibility exists that a child's relationship with a natural parent could be severed is, in fact, broader than necessary to assure that such a proceeding will meet the requirements of "fundamental fairness."

■■ The primary purpose of both adoption and termina-

---

[8]

"* * * The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation * * *.

"* * * [C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by governmental action * * *." *Cafeteria Workers v. McElroy,* 367 US 886, 895, 81 S Ct 1743, 6 L Ed 2d 1230 (1961).

" 'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts * * *." *Hannah v. Larche,* 363 US 420, 442, 80 S Ct 1502, 4 L Ed 2d 1307 (1960).

"* * * [D]ue process is flexible and calls for such procedural protections as the particular situation demands * * *." *Morrissey v. Brewer,* 408 US 471, 481, 92 S Ct 2593, 33 L Ed 2d 484 (1972).

*See also Wolff v. McDonnell,* 418 US 539, 94 S Ct 2963, 41 L Ed 2d 935 (1974).

tion proceedings is the protection and promotion of a child's "best interest."[9] Two significant contributions a child's attorney might be expected to make in these proceedings are: (1) by serving as an advocate for a position taken by his "client" relative to the issues involved, and (2) by ensuring that the record upon which the court must rely in exercising its discretion is as complete and accurate as possible. Where, however, the child involved is by reason of his immaturity incapable of having or communicating a view as to how his personal interests would be best served, counsel cannot possibly fulfill the first of his anticipated roles—that of an advocate. Whether, on the other hand, the presence of counsel at least theoretically responsible solely to the child is necessary to ensure the development of an adequately complete record focusing upon the child's "best interests" would depend upon both the capabilities and diligence employed by those already present and the resources otherwise available to the court in each case. The trial court, directed by statute to exercise its authority for the benefit of the child, would appear to be peculiarly well suited to make the determination of whether independent counsel might produce relevant evidence additional to that introduced by those already participating in the proceeding, either through the production of additional witnesses or through the examination of those present.

The "due process" to which a child is entitled is not enhanced by the rule formulated in *Wade* where "independent" counsel does not—and cannot—serve an

_____

[9] ORS 109.350 provides in relevant part that a petition for adoption may be granted when the court is satisfied that the petitioning parties are "of sufficient ability to bring up the child and furnish suitable nurture and education, having reference to the degree and condition of the parents, and that it is fit and proper that such an adoption be effected * * *." ORS 419.523 authorizes the termination of parental rights where the court finds that the parent is "unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent * * * is improbable in the forseeable [sic] future due to conduct or conditions not likely to change," or that the parent has failed to provide for the child's basic physical and psychological needs for one year prior to the filing of the petition, or that the parent has "abandoned" the child.

identifiable purpose. We have, therefore, upon reconsideration concluded that the *Wade* rule ought to be replaced by a more flexible approach which permits the trial court to determine on a case-by-case basis whether separate counsel for the child is required in any given termination or adoption proceeding. We regard our decision here as an attempt to administer applicable due process standards in a reasonable fashion. It should not be interpreted as a retreat from the view that as parties in both termination and adoption proceedings children possess rights of which they may not be deprived arbitrarily. Independent counsel may continue to be necessary under some circumstances— i.e., where counsel can act in the traditional role of an advocate, or where the record produced by the additional parties is not sufficiently complete to permit the court to make a decision based upon the best interests of the child. Counsel should in those cases be provided, either upon appropriate motion or upon the court's own initiative.[10]

No one suggests, of course, that the four-year-old

[10]ORS 419.498 provides that a juvenile court "may appoint an attorney to represent the child in any case * * *"—including an action initiated pursuant to ORS 419.523 for the termination of parental rights. The powers of circuit courts presiding over adoption proceedings, as courts of equity, include that of providing counsel for children where required.

The Supreme Court conceded that a rule requiring the appointment of counsel in all probation or parole revocation cases would have the appeal of simplicity, but nonetheless declined to adopt such a standard in *Gagnon v. Scarpelli,* 411 US 778, 93 S Ct 1756, 36 L Ed 2d 656 (1973), noting that it would

"* * * impose direct costs and serious collateral disadvantages without regard to the need or the likelihood in a particular case for a constructive contribution by counsel * * *.

"* * * * *

"In some cases * * * the probationer's or parolee's version of a disputed issue can fairly be represented only by a trained advocate. But due process is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed.

"* * * * *

"* * * [T]he decision as to the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system. Although the presence and participation of counsel

child subject to these proceedings was capable of communicating to his own counsel a position—a preference—which counsel might in turn have sought to advocate in the context of the adoption hearing. The evidence produced below included the testimony of some 27 witnesses, among whom were three psychiatrists, five caseworkers and "service aide" workers familiar with the child's history, and representatives of the adoption department of the Children's Services Division. Additionally, the court below had access to both a report filed by the Division pursuant to ORS 109.310[11] and a juvenile case history accumulated by the Division from the time the child was placed in its temporary custody in early 1973 until the time of the hearing. It is reasonable to conclude that no significant contribution might have been made by independent counsel in this case. Failure to grant father's motion did not constitute error.

▮ As a general rule the consent of parents, guardians or others standing in the position of a parent or guardian is a jurisdictional prerequisite to the entry of an adoption order; action taken in the absence of the required consent is a "nullity, not voidable but void."

will probably be both undesirable and constitutionally unnecessary in most revocation hearings, there will remain certain cases in which fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees." 411 US at 787-90.

[11] "(3) If such [adoption] petition is for the adoption of a minor child, a copy thereof together with a statement containing the full names and permanent address of the petitioners and the full names and permanent addresses of all persons whose consent to the adoption is required under ORS 109.312, if such names and addresses are known or may be readily ascertained by the petitioners, shall be served on the Administrator of the Children's Services Division by registered mail or personally. The court shall not rule on the petition until the expiration of 60 days from the filing of the petition, unless the running of such time is waived by the division.

"(4) Within the time and in the manner provided in this section, the Children's Services Division may file for the consideration of the judge before whom the petition for adoption is pending such information regarding the status of the child and evidence as to the suitability of the proposed foster home as the division desires to submit * * *." ORS 109.310(3) and (4).

*Furgeson v. Jones,* 17 Or 204, 219, 20 P 842, 11 Am St R 808, 3 LRA 620 (1888). *Hughes v. Aetna Casualty Co.,* 234 Or 426, 383 P2d 55 (1963); *In Re Estate of Myers,* 197 Or 520, 254 P2d 227 (1953); *Small v. Andrews,* 20 Or App 6, 530 P2d 540 (1975). Specific and limited statutory exceptions to this established rule have been incorporated into ORS 109.314 through 109.329. As one of these exceptions, ORS 109.322 provides in relevant part:

> "If either parent * * * is imprisoned in a state or federal prison under a sentence for a term of not less than three years, there shall be served upon such parent, if he has not consented in writing to the adoption, a citation in accordance with ORS 109.330 to show cause why the adoption of the child should not be decreed. * * * Upon hearing being had, if the court finds that the welfare of the child will be best promoted through the adoption of the child, the consent of the * * * imprisoned parent is not required, and the court shall have authority to proceed regardless of the objection of such parent * * *."

Father contends that by treating imprisoned parents "differently 'and less favorably" than other parents this statute violates the equal protection and due process guarantees of the United States and Oregon Constitutions. He argues that imprisonment alone constitutes neither the "conduct [nor] condition seriously detrimental of the child" (ORS 419.523(2)), "neglect" (ORS 419.523(3)), nor "abandonment" (ORS 419.523(4)), which is a necessary precondition to the termination of parental rights in an action commenced by the state pursuant to ORS 419.525, and contends that the "termination" of his rights which may be effected under the terms of ORS 109.322, therefore, represents impermissibly arbitrary and discriminatory state action.

In *State v. Grady,* 231 Or 65, 371 P2d 68 (1962), the Supreme Court did, in fact, reverse an order terminating a natural mother's parental rights where that order had been based in large part upon her imprison-

ment on a felony conviction. As noted by the court in *Grady,* the question presented there was whether the state had established by a preponderance of competent evidence that the mother was unfit to continue the parental relationship by reason of "conduct or conditions which were seriously detrimental to the child * * *." 231 Or at 67. Emphasizing that termination of parental rights is not a necessary consequence of incarceration in a penal institution, the court concluded, in reliance upon the record before it, that the state had not met its burden.

In the course of its opinion in *Grady* the court also noted that "incarceration does not legally effectuate a parental abandonment of a child so as to waive the necessity for a consent to a proposed adoption * * *." 231 Or at 67. Unaccountably, the court made no reference whatsoever to ORS 109.322 which had been enacted some five years previously during the 1957 legislative session. *See* Oregon Laws 1957, ch 710, § 6. We have previously noted that the court in *Grady* also subordinated the best interests of the child to any nebulous effect the continuation of the parent-child relationship might have in the rehabilitation of the mother after her sentence was served. *See State ex rel Juv. Dept. v. Archuletta,* 12 Or App 596, 506 P2d 540, Sup Ct *review denied* (1973). Although *Grady* clearly stands for the proposition that imprisonment alone, as an isolated factor, may not be relied upon to establish a parent's "unfitness" as a matter of law, the opinion provides no support for the proposition that in the context of a contested adoption an imprisoned parent may not reasonably be treated as having an essentially different status than other parents at least theoretically capable of presently providing their children with a stable home environment.

Prior to its decision in *Grady,* the court had held in *Simons v. Smith,* 229 Or 277, 366 P2d 875 (1961), that the consent of a natural parent was not obviated simply because he or she had failed to secure custody of

the child involved subsequent to the dissolution of the parents' marriage, noting that as a general rule the required consent may be dispensed with only where the parent "is under some disability or is at fault in a matter related to the parent-child relationship * * *." 229 Or at 278. As an example of a situation in which a parent's "disability" may permit the granting of an adoption over objection, the court specifically referred to ORS 109.322 which in its entirety deals with cases in which the parent is "mentally ill, mentally deficient or imprisoned."

Where an adoption petition involving the child of an imprisoned parent is filed with the circuit court, ORS 109.322 specifically provides that the parent must be served with a citation to show cause why the adoption should not be decreed. At the subsequent hearing the parent is given an opportunity to appear and present his defense in opposition to the adoption to provide the court with information relevant to the question of whether the protection and promotion of the child's interests requires the granting of the petition. This procedure serves to afford an imprisoned parent due process and equal protection of the law. Where a parent's own conduct has led to a situation in which he is incapable of providing his child with a stable home for the foreseeable future, the state may, when balancing his refusal to consent against the interests of the child involved, reasonably choose to accord it a different weight than the refusal of parents not suffering the same disability.

Father next contends that because ORS 109.322 provides no guidelines, standards or direction for determining whether an adoption will "best promote" the welfare of the child in any given case, it is unconstitutionally vague and indefinite. Petitioners in *State v. McMasters,* 259 Or 291, 486 P2d 567 (1971), challenged a decree terminating their parental rights on the ground that ORS 419.523, which at that time provided simply that parental rights could be terminated

[ 614 ]

where the court found that a parent was "unfit by reason of conduct or condition seriously detrimental to the child," was unconstitutionally "broad, uncertain and vague." In rejecting the arguments of the petitioners and upholding the statute the court pointed out that:

"Even in cases involving criminal statutes an important consideration is whether the statute is as explicit as the legislature can draw and accomplish the purpose it intends * * *.

"In our opinion, to accomplish its primary purpose of caring for the welfare of the child, the legislature would have extreme difficulty being more specific. The legislature could specify certain conduct upon the part of the parents which would cause them to be deprived of their parental rights; however, that is not the intent of the legislature or of this court in interpreting this statute. The legislature and this court do not desire to sever parental rights for any conduct by the parents unless such conduct seriously affects the child's welfare * * *." 259 Or at 298-99.

In providing that a court may grant an adoption over the objection of an imprisoned parent where "the welfare of the child will be best promoted * * *" through the adoption, the legislature would appear to have attempted to protect the interests of both children and parents by avoiding the use of an unnecessarily specific standard which courts might have difficulty in applying in all cases. We conclude that the statutory standard is both intelligible and adequate; we make this judgment cognizant of the fact that there now exists in this state an abundance of case law interpreting, albeit in a somewhat different context, the "best-interests-of-the-child" standard discussed by the Supreme Court in *Tingen v. Tingen,* 251 Or 458, 446 P2d 185 (1968).[12]

---

[12] "In determining the best interests of a child in a custody dispute the court ought to consider all the relevant factors. These, as we see them, would generally include: (1) the conduct of the parties; (2) the moral, emotional and physical fitness of the parties; (3) the compara-

■ We have found ample evidence in the record indicating that this child's welfare will, in fact, be best promoted if those with whom he has been living since his mother's death some three years ago are permitted to become his legal parents.

Affirmed.

**FORT, J.,** dissenting.

In *State v. Jamison,* 251 Or 114, 444 P2d 15, 444 P2d 1005 (1968), relied upon by us in *State ex rel Juv. Dept. v. Wade,* 19 Or App 314, 527 P2d 753, 19 Or App 835, 528 P2d 1382 (1974), Sup Ct *review denied, appeal dismissed* 423 US 806 (1975), the court said:

> "It is the general rule that where the state is the adversary party and is attempting to take a child permanently from a parent, the parent is entitled to the assistance of retained counsel. See Annotation, 60 ALR2d 691, 692 (1958). We now hold that, where the parent in a termination proceeding is indigent, counsel must be supplied at public expense. We need not now decide whether constitutional due process requires the appointment of counsel in other types of juvenile hearings.
>
> "The permanent termination of parental rights is one of the most drastic actions the state can take against its inhabitants. It would be unconscionable for the state forever to terminate the parental rights of the poor with-

tive physical environments; (4) the emotional ties of the child to other family members; (5) the interest of the parties in, and attitude toward, the child; (6) the age, sex, and health of the child; (7) the desirability of continuing an existing relationship and environment; and (8) the preference of the child.

"Best interest in custody matters should not be determined by isolating one of these variable factors and relying on it to the exclusion of other factors. Rather, best interest should be determined upon these, and other, relevant factors by a weighing and balancing process, and not by treating any one of them as a fixed rule or standard." 251 Or at 459-60.

*See also McClure and McClure,* 21 Or App 441, 535 P2d 112, Sup Ct *review denied* (1975); *Buchholz v. Buchholz,* 21 Or App 293, 534 P2d 1156 (1975); *Ellenwood and Ellenwood,* 20 Or App 486, 532 P2d 259 (1975); *R. v. R.,* 15 Or App 464, 516 P2d 476 (1973); *A. v. A.,* 15 Or App 353, 514 P2d 358, 515 P2d 730 (1973), Sup Ct *review denied* (1974).

out allowing such parents to be assisted by counsel. *Counsel in juvenile court must be made available for parents and children alike when the relationship of parent and child is threatened by the state.* See *In re Gault,* supra. If the parents are too poor to employ counsel, the cost thereof must be borne by the public as in cases under ORS 419.498(2).

"The state points out that in the case at bar the mother did not request counsel and contends, therefore, that she waived counsel. We hold that waiver cannot be inferred from a failure to request court-appointed counsel by a person who, insofar as the record reveals, does not know of her right to counsel. " 251 Or at 117. (Emphasis supplied.)

Both *Jamison* and *Wade* deal with the right of parent and child to counsel in termination of parental rights cases brought in the juvenile court under ORS 419.523 to 419.527. The case at bar is an adoption proceeding brought under ORS ch 109. The court holds that "no valid distinction may be made between the proceeding at bar — a 'Chapter 109' adoption proceeding — and an action for the termination of parental rights — ORS 419.523 through 419.527 — which would warrant the application of a different rule with respect to the protection of the rights of the children involved." I agree with that holding. It follows, then, to me that the holding of *Jamison* has equal application to ORS ch 109 adoption proceedings.

In its opinion the court alludes to *Jamison* only in a footnote which offers no explanation why the very quotation there set forth does not itself require us to reach a different result here. I can only conclude that the Oregon Supreme Court in denying review of *Wade* certainly did not indicate it was disposed to reconsider its holding in *Jamison* nor that it disagreed with *Wade.* My understanding of the rule of *stare decisis* and of the role of this court in the Oregon judicial system requires this court to adhere to and follow that case. It is not for us to say that the portion of its hold-

ing relating to counsel for the child is dicta, as the majority here appears to do.

In *Stanley v. Illinois,* 405 US 645, 92 S Ct 1208, 31 L Ed 2d 551 (1972), the United States Supreme Court held that the father of an illegitimate child has a due process right to notice and a hearing in a juvenile court dependency proceeding having as its object the awarding of the child's legal custody. Certainly the right of a five-year-old child to be represented by counsel in a civil proceeding in which not only is he a party but which determines both whether he is to be permanently separated from his parent(s) and also what person(s) are to assume the role of parent(s) in his life is equally important, if not more important, than that father's right.

That court said in recognizing such a father's due process rights:

> "The private interest here, that of a man in the children he has sired and raised, undeniably warrants deference and, absent a powerful countervailing interest, protection. It is plain that the interest of a parent in the companionship, care, custody, and management of his or her children 'come[s] to this Court with a momentum for respect lacking when appeal is made to liberties which derive merely from shifting economic arrangements.' *Kovacs v. Cooper,* 336 U.S. 77, 95 [93 L Ed 513, 527, 69 S Ct 448, 10 ALR2d 608] (1949) (Frankfurter, J., concurring).

> "The Court has frequently emphasized the importance of the family. The rights to conceive and to raise one's children have been deemed 'essential,' *Meyer v. Nebraska,* 262 U.S. 390, 399 [67 L Ed 1042, 1045, 43 S Ct 625, 29 ALR 1446] (1923), 'basic civil rights of man,' *Skinner v. Oklahoma,* 316 U.S. 535, 541 [86 L Ed 1655, 1660, 62 S Ct 1110] (1942), and '[r]ights far more precious . . . than property rights,' *May v. Anderson,* 345 U.S. 528, 533 [97 L Ed 1221, 1226, 73 S Ct 840] (1953). 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.' *Prince v. Mas-*

[ 618 ]

*sachusetts,* 321 U.S. 158, 166 [88 L Ed 645, 652, 64 S Ct 438] (1944). The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, *Meyer v. Nebraska,* supra, at 399 [67 L Ed at 1045], the Equal Protection Clause of the Fourteenth Amendment, *Skinner v. Oklahoma,* supra, at 541 [86 L Ed at 1660], and the Ninth Amendment, *Griswold v. Connecticut,* 381 U.S. 479, 496 [14 L Ed 2d 510, 522, 85 S Ct 1678] (1965) (Goldberg, J., concurring)." 405 US at 651.

*See also Boddie v. Connecticut,* 401 US 371, 91 S Ct 780, 28 L Ed 2d 113 (1971). Certainly the need and thus the right of the child to have inquiry made on its behalf by competent, independent representation can be no less than that of a parent of an illegitimate child.

The court here points out that in this adoption proceeding the state through Children's Services Division filed the report authorized by ORS 109.310(3) and that its staff testified in this case. Here, however, apart from filing the motion to consolidate, the state did not appear and it was not otherwise represented by counsel. The adoption code, unlike the juvenile code, in ORS 419.494 has no provision allowing the court "in any proceeding" to appoint "some suitable person to appear in behalf of the child."

A second aspect of this case revolves about ORS 13.041, which provides in part:

"When a minor * * * is a party to any action, suit or proceeding, he shall appear * * * by a guardian ad litem appointed by the court in which the action, suit or proceeding is brought. If the minor does not have a * * * guardian, he shall appear by a guardian ad litem appointed by the court. * * *"

In this adoption case the child had no guardian. He was a party. *In re Flora's Adoption,* 152 Or 155, 52 P2d 178 (1935). The majority correctly concludes that a child who is the subject of an adoption petition is entitled to counsel therein, but holds that it is within the

[ 619 ]

trial court's discretion whether to appoint one, to be exercised on a case-by-case basis.[1]

In my opinion ORS 13.041 requires that a guardian ad litem be appointed for the child. If Children's Services Division had been appointed as a guardian of the child, it might well, it seems to me, have served in that capacity (ORS 419.521 or 419.511(3)), but here it was not and thus made no appearance. It would seem particularly so when, as here, Children's Services Division filed a report as required by ORS 109.310(4) recommending *against* the proposed adoption.[2]

This case presents with particular clarity the desirability for adherence to ORS 13.041 and more importantly the value both to court and child that a guardian might well have. As the brief of amicus points out, the adversaries here are passionately interested private parties, one seeking to assume the rights which the other seeks to preserve.

I do not believe on the facts of the case at bar that the failure of the court to appoint a guardian for the five-year-old child, particularly in view of its refusal to appoint counsel, was consistent with "fundamental fairness," procedural due process or ORS 13.041.

For all the foregoing reasons I respectfully dissent.

LEE, J., joins in this dissent.

---

[1] I apprehend that, in the absence of reasonably ascertainable guidelines, some courts will rarely, if ever, appoint counsel, while others in virtually all cases will do so.

[2] Recently in another termination of parental rights case (*State ex rel Juv. Dept. v. Greybull,* 23 Or App 674, 543 P2d 1079 (1975)), there under the juvenile code, the state in oral argument took "the position that the child as a party has representation—his guardian, and his guardian in most of these situations is the Children's Services Division." It then urged, if I correctly understood its argument, that the resolution of the question in each case concerning counsel for the child should be at least primarily the responsibility of the guardian.