498 So.2d 1342 (1986)
In the Interest of P.A.D., J.T.D., and J.B.D., All Children.
No. BM-29.
District Court of Appeal of Florida, First District.
December 10, 1986.
Jim Smith, Atty. Gen. and Eric J. Taylor, Asst. Atty. Gen., Tallahassee, for appellant.
Cynthia L. Nichols, Jacksonville, for appellee.
James Dulfer, Brent R. Taylor, Guilene Theodore, Henry George White, Mary K. Williams and Christina A. Zawisza, Tallahassee, for amicus curiae Florida Legal Services, Inc.
SHIVERS, Judge.
Appellants, Department of Health and Rehabilitative Services (HRS), appeal the trial court's denial of three petitions for permanent commitment. We affirm the trial court's order dismissing all three petitions for permanent commitment and hold that section 39.41(1)(f)3.b., Florida Statutes (1985), is unconstitutional because it permits permanent severance of parental custody without requiring the state to prove, by clear and convincing evidence, abuse, abandonment or neglect.
The facts of this case stem from a series of dependency determinations initiated by the Department of Health and Rehabilitative Services (HRS). On April 18, 1983, P.A.D. and J.T.D. were found dependent by the Circuit Court for the Fourth Judicial Circuit in Duval County. In March of 1985, the same court determined J.B.D. to be dependent. HRS placed all three children in a foster family home because the children's parents failed to cooperate with Children Homemaker Services. Specifically, the parents had not maintained adequate housekeeping standards, or provided sufficient food for their children. The parents entered into a "performance agreement" with HRS in which they promised to secure regular full time employment or retain vocational training and financial assistance. In addition, they were to obtain a suitable house which would be kept clean and stocked with food. Finally, the mother was to continue to attend a parent support group at a 90% attendance rate. It is the failure of the parents to comply with the terms of the performance agreement which generated the constitutional issues presented by the instant case.
On October 17, 1985, HRS filed petitions seeking permanent commitment of P.A.D. and J.T.D. HRS filed a similar petition with respect to J.B.D. on November 6, 1985. In all three petitions, the sole reason *1343 which HRS alleged as a basis for permanent severance of parental rights was that the parents failed to substantially comply with the performance agreements which they had signed. On February 7, 1986, the circuit court held a hearing to determine whether all three petitions for permanent commitment should be granted. At the hearing, the parents moved to dismiss all three petitions on the grounds that a portion of section 39.41(1)(f), Florida Statutes (1983), which permits permanent severance of parental rights solely for failure to substantially comply with the terms of a performance agreement is facially unconstitutional. In support of their motion, the parents cited In the Interest of R.W., 481 So.2d 548 (Fla. 5th DCA 1986), a Fifth District Court of Appeal decision which struck down section 39.41(1)(f)1.d., Florida Statutes (1983), as an unconstitutional delegation of legislative authority. The trial court concluded that it was bound by In the Interest of R.W. and ultimately issued an order denying the three petitions which HRS had filed for permanent commitment. The trial court also found that both section 39.41(1)(f)1.d., Florida Statutes (1983), and section 39.41(1)(f)3.b., Florida Statutes (1985),[1] were unconstitutional as violative of substantive due process. HRS timely filed notice of appeal on March 13, 1986. Subsequent to this appeal, the Florida Supreme Court affirmed the Fifth District Court of Appeal's decision in In the Interest of R.W. 495 So.2d 133 (Fla. Aug. 21, 1986).
In affirming the Fifth District's decision, the Florida Supreme Court stated that "[f]ailure to comply with a performance agreement's provisions ... cannot be the sole basis for permanently terminating a parent's fundamental right to the custody of his or her child or children." 495 So.2d at 135. The court further stated that "[w]e conclude and hold that, before parental rights can be permanently terminated, the state must show abandonment, abuse, or neglect by clear and convincing evidence." Id. The supreme court's holding determines the outcome of all three petitions for permanent commitment in the instant case as well as the constitutionality of section 39.41(1)(f)3.b., Florida Statutes (1985).
The performance agreements for P.A.D. and J.T.D. were signed on July 10, 1984, and were therefore governed by section 39.41(1)(f)1.d., Florida Statutes (1983), which the Florida Supreme Court found unconstitutional in In the Interest of R.W. The trial court therefore reached the correct result in dismissing HRS' petitions for permanent commitment with respect to P.A.D. and J.T.D. The trial court also found that both the 1983 and 1985 versions of section 39.41 were unconstitutional on substantive due process grounds. However, it is unnecessary for us to evaluate the merits of such an attack on the 1983 statute since the Florida Supreme Court has already expressly declared that statute to be unconstitutional. It remains for us to consider, therefore, whether the trial court's finding that the 1985 version of section 39.41 is unconstitutional should be affirmed, and, if so, what effect such a determination will have on the remaining performance agreement which was signed on April 18, 1985, and which concerned J.B.D.
Section 39.41(1)(f)(3)b. Florida Statutes (1985), provides:
(1) When any child is adjudicated by a court to be dependent, the court having jurisdiction of the child shall have the power, by order, to:
... .
(f) Permanently commit the child to the department or a licensed child-placing agency willing to receive the child for subsequent adoption if the court finds that it is manifestly in the best interests of the child to do so, and:

*1344 3. If the court finds by clear and convincing evidence, at a hearing applying the rules of evidence in use in civil cases, that:
b. The parent or parents of the child have failed, upon the expiration of a performance agreement entered into or of a plan for permanent placement submitted to and approved by the court under section 409.168, to comply substantially with such agreement or plan. If the court finds that the failure to comply with the performance agreement or plan is the result of conditions beyond the control of the parent or parents, such failure shall not be used as a ground for permanent commitment.
The 1985 version of section 39.41 is virtually identical to its 1983 predecessor. Indeed, the 1985 statute suffers from the same constitutional infirmities as the 1983 statute to the extent that it permits permanent severance of parental ties for something less than the Florida Supreme Court's requirement of clear and convincing proof of abuse, abandonment or neglect. Consequently, because the 1985 statute is at variance with the supreme court's holding in In the Interest of R.W., it too is unconstitutional under the same rationale expressed in that case.
Since the 1985 statute is unconstitutional, and because it was in force when J.B.D.'s performance agreement was signed, the trial court reached the correct result in denying the state's petition for the permanent commitment of J.B.D. The trial court's denial of the petition for J.B.D., as well as the petition for P.A.D. and J.T.D., should be affirmed. The trial court therefore correctly denied all three petitions.
AFFIRMED.
SMITH, J., concurs.
ZEHMER, J., concurs, with written opinion.
ZEHMER, Judge, concurring.
While I concur with the result and rationale of the majority opinion, I feel it necessary to explain my reasons for doing so in greater detail.
The supreme court declared section 39.41(1)(f)1.d., Florida Statutes (1983), constitutionally invalid in In re R.W., 495 So.2d 133 (Fla. 1986), although it is not entirely clear whether the court premised its decision on lack of procedural due process or substantive due process. Without belaboring that question, however, I believe that whether the rationale of that decision likewise compels a holding that section 39.41(1)(f)3.b., Florida Statutes (1985), is unconstitutional requires further explanation.
In 1984 the legislature amended section 409.168, Florida Statutes, in several significant respects. Ch. 84-311, § 14, Laws of Florida. Among other things, those amendments provided for more extensive participation, supervision, and review of performance agreements by the circuit court than did the prior statute. In particular, the court is now required to see that conditions of the performance agreement comport with orders of the court and are directed toward alleviating the conditions which served as the basis for a finding of dependency. While these amendments compelling closer court scrutiny may well have cured procedural due process deficiencies in the previous statutory scheme, they did not cure the substantive due process deficiencies in the provisions of section 39.41(1)(f)3.b. and its predecessor, section 39.41(1)(f)1.d, as is shown by the careful analysis and reasoning in the trial court's order holding these statutes unconstitutional:
The United States Supreme Court has repeatedly recognized that natural parents possess a constitutionally protected "fundamental liberty interest ... in the care, custody, and management of their child... ." Santosky v. Kramer, 455 U.S. 745, 753 [102 S.Ct. 1388, 1394, 71 L.Ed.2d 599] (1982). As that Court noted in Stanley v. Illinois, 405 U.S. 645, 651 [92 S.Ct. 1208, 1212, 31 L.Ed.2d 551] (1972):
"The rights to conceive and to raise one's children have been deemed `essential,' *1345 Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625 [626], 67 L.Ed. 1042 (1923), `basic civil rights of man,' Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942), and `[r]ights far more precious ... than property rights,' May v. Anderson, 345 U.S. 528, 533, 73 S.Ct. 840, 843, 97 L.Ed. 1221 (1953)."
Moreover,
"the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition. It is through the family that we inculcate and pass down many of our most-cherished values, moral and cultural." Moore v. City of East Cleveland, 431 U.S. 494, 503-04 [97 S.Ct. 1932, 1937-38, 52 L.Ed.2d 531] (1977)."
The Florida Supreme Court has, likewise, recognized that there is an "important and fundamental" "constitutionally protected interest in preserving the family unit and raising one's children." In the Interest of D.B., 385 So.2d 86 90 (Fla. 1980).
Clearly, the State of Florida has a legitimate interest in protecting children within its borders. See generally Griffin v. State, 396 So.2d 152 (Fla. 1981). However, that interest is not absolute. Because of the countervailing "fundamental" right of parents to raise their children, before the State may permanently terminate parental rights, it must establish "a compelling interest" justifying the proposed termination. Otherwise, the parents are denied substantive due process of law. As one court has held, to satisfy the requirements of substantive due process when permanent termination of parental rights if [sic] involved, "the state must show that the consequences, in harm to the children, of allowing the parent-child relationship to continue are more severe than the consequences of termination." Alsager v. District Court of Polk County, 406 F. Supp. 10, 23 (S.D.Iowa 1975), aff'd, 545 F.2d 1137 (8th Cir.1976). Accord Roe v. Conn, 417 F. Supp. 769, 779-80 (M.D.Ala. 1976). To permit permanent termination without requiring that the State meet such a burden would be unconscionable, as well as unconstitutional.
It is this Court's opinion that because Section 39.41(1)(f)1.d., Florida Statutes (1983), permitted, and Section 39.41(1)(f)3.b, Florida Statutes (1985), permits permanent termination of parental rights merely upon a showing that, though able to do so, the parents have failed "to comply substantially" with a performance agreement prepared and entered into pursuant to Section 409.168, Florida Statutes, without also requiring a showing that such noncompliance will result in harm to the child more severe than will result from breaking up the family unit (or, for that matter, that the noncompliance will result in any harm to the child), those Statutes are unconstitutional on their face in that they deny parents ... their right to substantive due process of law. The Court believes that this conclusion finds further support in decisions requiring that the State establish a child's dependency at the time of the permanent commitment proceeding before permanent commitment can be ordered. See, e.g., In the Interest of A.D.J., 466 So.2d 1156, 1162-63 (Fla. 1st DCA 1985); In the Interest of A.B., 444 So.2d 981, 992 (Fla. 1st DCA 1983). The logical result of such a conclusion is, and must be, that for all practical purposes, permanent termination of parental rights is constitutionally permissible only if the State establishes by clear and convincing evidence neglect, abuse or abandonment by the natural parents. See In the Interest of R.W., supra.

I fully agree with this analysis by the trial court. The grounds of "neglect, abuse or abandonment," cited in the trial court's order and the majority opinion, should not be treated as the only grounds for permanent commitment that will pass constitutional muster; those grounds are simply the only presently existing statutory grounds for ordering such commitment. Whether additional grounds may be *1346 added by the legislature, without violating constitutional prohibitions, to insure that continued placement with the natural parents will not result in substantially greater harm to dependent children than would permanent placement with others is not necessarily foreclosed by our reference to, and reliance on, currently legislated grounds.
With this additional explanation, I concur in the majority opinion.
NOTES
[1] Technically, section 39.41(1)(f)3.b., Florida Statutes (Supp. 1984), is the controlling statute with respect to J.B.D., whose performance agreement was signed on April 18, 1985. However, because both the 1984 and 1985 statutes contain identical language, and because the trial court ruled on the constitutionality of the 1985 statute, we will refer to the 1985 statute throughout the remainder of this opinion.