510 So.2d 623 (1987)
IN the INTEREST OF J.D., a Child.
No. BR-251.
District Court of Appeal of Florida, First District.
June 30, 1987.
*624 Charlene Miller Carres, Tallahassee, for appellant.
Paula A. Monopoli and James M. Ervin, Jr., of Holland & Knight, Tallahassee, for Guardian Ad Litem.
Robert A. Butterworth, Atty. Gen., and Louis F. Hubener, Dept. of Legal Affairs, Tallahassee, for appellee State of Fla. Dept. of Health and Rehabilitative Services.
*625 WIGGINTON, Judge.
The mother of J.D. brings this appeal from the trial court's order denying her "Motion for Dismissal of Dependency" and determining that it was unnecessary to reach the questions presented by her "Request for Evaluation and a Due Process Hearing." The mother contends that the lower court erred in maintaining its dependency jurisdiction over an action purportedly dealing solely with the educational placement of J.D., in permitting an unauthorized individual to exercise the mother's parental rights, and in ordering a change in J.D.'s educational placement without providing full protection of the mother's rights prior to the change, as well as in failing to require that integrating J.D. into the general student body be given overriding preference. Following a careful study of the record and oral argument of the parties, we conclude that we must reverse the trial court's order and remand for further action.
The proceedings leading to the order under review wound their way through a year and a half of hearings and evaluations stemming from a petition of dependency filed by the Department of Health and Rehabilitative Services on March 29, 1985. The impetus for the petition was J.D.'s teachers' concern with her emotional state, as well as with her academic difficulties. At the time, J.D. was repeating kindergarten. Her teachers felt a need to test J.D. and her brother for learning disabilities. The case remained pending for approximately one year before the trial court adjudicated J.D. dependent on March 3, 1986. That order was based on reports received by the Department of Health and Rehabilitative Services that both of the children were in need of testing and assessment for learning disabilities and psychological needs. The order recognized the mother's refusal to give her consent to school authorities and that both children had a lengthy dependency referral record. In the meantime, in the fall of 1985, J.D. had been moved by the mother from the Leon County school system to a private Christian school. At the latter school, however, J.D. exhibited significant academic problems and was destructive in class. Consequently, for the spring semester of 1986, the mother placed J.D. in the Gadsden County school system, the county in which the mother then resided.
At the close of the semester, the school system personnel evaluated J.D.'s learning capabilities at a "staffing," an evaluative meeting to review all relevant testing results for appropriate placement. The staffing was attended by a psychologist for the school system, a staffing specialist, J.D.'s classroom teacher, the school's guidance counselor, another exceptional education teacher, and J.D.'s guardian ad litem. The staffing was based upon testing done by Dr. Gosling, a clinical psychologist, who had evaluated J.D. a year earlier, on July 23, 1985. It was Dr. Gosling's opinion that due to J.D.'s early health history of a birth defect (subsequently rectified by surgery), J.D. is behind expectation for her age and cognitive, physical and emotional development. It was Dr. Gosling's opinion that J.D. would need more individualized attention that could be given in a special needs classroom, as she would likely be overwhelmed in a regular classroom setting.
As a result of the staffing, J.D. was evaluated as functioning in the mentally handicapped range. At a subsequent court hearing on June 23, 1986, the Gadsden County school system's psychologist made clear his concern that the academic expectations for J.D. were going to increase every year and that if she continued to fall behind it would be a negative experience for her.
Later, on July 14, 1986, following a July 7 hearing concerning J.D.'s best educational interest, the trial court ordered that she be registered in the Leon County school district for the 1986-87 year, and be evaluated by that district for appropriate classroom placement. A staffing was thus held by the Leon County school personnel, attended by the mother and her attorney on August 25, 1986. The recommendation was that J.D. be placed in the educable mentally handicapped (EMH) program. The mother refused to consent to such placement.
*626 At a September 8, 1986 hearing, the staffing and admissions specialist for exceptional student education in Leon County testified that several tests administered to J.D. revealed her intellectual assessment consistently scored below the mean, making her eligible for placement in an EMH class. He further testified that placement in an EMH program is not permanent and that a reevaluation is done every three years. Each year the parent is asked to come in and assist in developing the next year's program.
The mother in turn testified as to her concern to have J.D. in the first grade. She felt the crux of J.D.'s problem was her vision, and that since her vision had been corrected she should be given a chance to participate in a normal classroom setting. At the same hearing, HRS worker, Bill Davis, testified that while the children's physical needs were being met by the mother, and J.D. was receiving adequate care and supervision, J.D.'s classroom teacher had reported she was not doing well in her classroom, was not applying herself, and was experiencing a number of behavioral problems. However, because the mother testified that J.D.'s teacher had stated J.D. was one of her better students and that she brought home good grades, the guardian ad litem requested a continuance in order to produce the teacher. On September 12, the hearing was reconvened and J.D.'s first grade teacher was called to testify. She testified that J.D. needed to be worked with on a one-to-one basis and could not "do a lot of first grade skills... ." She testified further that homework had been returned incomplete. She also stated she had told the mother that J.D. was a behavioral problem, was using profanity, and would benefit from further placement in an EMH classroom. Her teacher further testified as to J.D.'s "frustration" in not being able to do the work. According to the teacher, "in her mind, I guess she's thinking, `Well, if I can't do it, then I won't worry about it,' because she will sit there and not do it."
The result of the September 12 hearing was the trial court's authorizing the guardian ad litem to give permission to admit J.D. into an EMH class. The court was of the opinion that such placement was in J.D.'s best interest. However, the Leon County school district was of the impression it needed someone to sign as a surrogate parent and appointed one. The surrogate parent signed J.D. into the class on November 10, 1986.
The next day, the mother filed her "Motion for Dismissal of Dependency" and a "Request for Evaluation and Due Process Hearing." The latter motion requested the court to relinquish jurisdiction so that the mother could pursue an administrative hearing as provided by section 230.23(4)(m)4, Florida Statutes (1985). It also alleged that J.D.'s current report card showed her progressing satisfactorily in every area, needing improvement only in language skills. On November 24, a hearing was held during which a great deal of hearsay was offered but no actual evidence or testimony adduced or heard concerning J.D.'s progress. The State Attorney's position at the hearing was that the jurisdiction of the court superseded the procedures set forth in section 230.23, and that the court had jurisdiction to direct J.D.'s educational needs. On the other hand, the mother's attorney argued that the mother was entitled to an administrative due process hearing and that the court did not have jurisdiction under chapter 39 to continue dependency based solely on J.D.'s educational needs. She maintained that Federal and Florida law mandate such a procedure, which is exclusive and preempts the provisions of chapter 39.
Nonetheless, on December 10, 1986, the trial court issued the order presently on appeal denying the mother's motion for dismissal of dependency. The court specifically held that it was not necessary to reach the question presented by the mother's request for evaluation and due process hearing since it was retaining jurisdiction over the children, and that it was in J.D.'s best interest that she be placed in the EMH program of the Leon County school district.
At a subsequent hearing on January 5, 1987, for an emergency stay, the mother *627 submitted an evaluation of J.D. prepared by a psychology trainee at Florida State University's psychology clinic. The report recommended that J.D. be reevaluated in one year in order to identify progress made following her EMH placement, which reevaluation would be critical given J.D.'s learning deficits and her history of visual and auditory problems. The court denied the motion for emergency stay.
The issues presented on appeal deal with a perceived tension between the trial court's broad jurisdiction under chapter 39,[1] and the provision for a due process hearing in section 230.23(4)(m)4.[2] The latter section states that a parent or guardian of an exceptional student evaluated and placed in a special education program shall be notified of such and be entitled to a due process hearing conducted by a hearing officer from the Division of Administrative Hearings, Department of Administration. Review of the hearing officer's order is by the district court of appeal as provided by section 120.68, Florida Statutes. Further, section 230.23(4)(m)5 prohibits segregating the child from normal students until a careful study is made indicating segregation is for the child's benefit or is necessary because of difficulties involved in teaching the student in a regular class.
Herein, the mother argues that the issue before the trial court at the November 1986 hearing solely concerned J.D.'s educational needs and was therefore controlled by the procedures set forth in section 230.23(4)(m)4, which preempt the trial court's jurisdiction under chapter 39. On the other hand, J.D.'s guardian ad litem and HRS, appellees herein, argue that J.D. was properly found dependent on the basis of the mother's neglect in failing early-on to obtain needed vision and hearing testing for J.D., as well as in depriving her of the necessary educational attention for her emotional disturbance. In their opinion, since the mother continues to neglect such needs, J.D. continues to be dependent and the cause remains exclusively within the trial court's jurisdiction under chapter 39.
The mother also argues that she should not have been deprived of her right to proceed under section 230.23(4)(m)4 and rule 6A-6.03311(5), Florida Administrative Code,[3] to seek an administrative due process hearing simply because a surrogate parent, appointed under rule 6A-6.0333 consented to J.D.'s placement in the EMH class. The mother maintains that not only does that deprivation infringe on her "fundamental liberty interest" as a parent in the "care, custody, and management" of her child, Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), but that the surrogate parent's consent was not given in compliance with rule 6A-6.0333(3)(a), since he never met J.D.
Appellees respond that the surrogate parent satisfied the rule by becoming acquainted with J.D.'s needs through discussion with school personnel and review of her records. Moreover, they point to the fact that the guardian ad litem, although signing the consent to placement in his role as such, is also trained as a surrogate parent. Finally, appellees take the position that the hearing procedures in section 230.23(4)(m)4 and rule 6A-6.03311(5) contemplate "a concerned parent with a legitimate dispute with regard to the educational placement of a child by a school system." *628 According to appellees, once the parent has "abdicated responsibility for the child's needs," and the child is adjudicated dependent, the parent is replaced by the surrogate parent, who is the appropriate person to request a hearing. Thus, appellees argue that the mother's request for an administrative hearing was properly not considered by the school board.
The arguments thus crystallized, we turn our attention first to the perception of the parties that there is an irreconcilable tension between the trial court's jurisdiction under chapter 39, and the hearing provisions in section 230.23(4)(m)4. While recognizing that the United States Supreme Court has declared the procedures and remedies in 20 U.S.C. § 1415 to be exclusive,[4] we perceive no such tension insofar as we hold that J.D.'s need for placement in an EMH class, and the mother's refusal to cooperate with school district authorities because of her disagreement with their evaluation and placement of J.D., are not circumstances sufficient in themselves to fall within the statutory definition of a dependent child.[5] When the issue is one solely concerned with the exceptional educational needs of a child, section 230.23(4)(m)4 controls. Should other circumstances exist leading to a proper adjudication of dependency, the trial court without question obtains continuing jurisdiction over the child, to act in the child's best interests. Nonetheless, the court may not exercise its chapter 39 powers to place the child in an exceptional education program, as that issue is not one before it or subsumed under its dependency jurisdiction. Consequently, the trial court may not, as in the instant case, disregard a request for a section 230.23(4)(m)4 due process hearing. Again, since the issue underlying such a hearing is not one contemplated by chapter 39, the trial court has no power in that regard. Indeed, section 230.23(4)(m)4, by its reference to a guardian, and rule 6A-6.0333, providing for a surrogate parent when the child is a "ward of the state," indicate that the remedies afforded by the statute and rule contemplate circumstances, as exist herein, involving a dependent child.
From the record before us, it appears that the December 10, 1986 order retaining jurisdiction over J.D. was premised solely on the educational needs of J.D. Consequently, it is invalid on its face since such needs do not form a statutory basis for a finding of dependency. Accordingly, the order is reversed, and the cause remanded for the court to clarify its order, if it can, and set forth other valid reasons for its finding of continuing dependency. Toward that end, given the passage of time, the court in its discretion may take additional evidence.
Our reversal of the order, however, does not end our inquiry. We have held that the order retaining jurisdiction over J.D. is invalid since J.D. may not be found dependent based solely on the struggle between the school district and J.D.'s mother over her placement in an EMH class. If there is no other reason on which to base a finding of continuing jurisdiction, then, without question, the parties may pursue the issue by way of a hearing under section 230.23(4)(m)4. However, should the court, on remand, find other valid reasons for continuing dependency, the parties must still be accorded their due process hearing. As long as the issue is contested, J.D. may not be placed in an EMH class without the need for such placement having first been determined by a hearing officer under section 230.23(4)(m)4 and rule 6A-03311(5).
*629 Of course, appellees maintain that consent for J.D.'s placement was obtained from the surrogate parent, and that by virtue of J.D.'s having been found dependent, the mother abdicated all responsibility for her needs, including, presumably, her responsibility and right to make decisions regarding J.D.'s educational needs. Although we strongly disagree with appellees' premise that J.D.'s mother abdicated all rights and responsibility in regard to J.D. once she was found to be dependent, we reiterate our holding herein that, without more, J.D. is no longer dependent, thereby rendering unnecessary participation of a surrogate parent.
However, assuming, arguendo, that proper findings are subsequently made on which to base a finding of continuing dependency, thus making J.D. a "ward of the state" and bringing into play rule 6A-6.0333,[6] the surrogate parent's consent herein was invalid as not complying with the rule's clear mandate that the surrogate parent become "acquainted with the child." See rule 6A-6.0333(3)(a). Although appellees contend that "acquainted" means something less than a face-to-face meeting with the child, we decline to dilute that clear responsibility. Appellees' interpretation would render the requirement meaningless.[7]
Finally, assuming proper adjudication of dependency and proper participation by the surrogate parent, we reiterate our strong disagreement with appellees' position that the surrogate usurps altogether the parent's role in deciding the child's educational placement. Such an argument runs counter to the "historical recognition that freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599, 610 (1982). As emphasized in Lassiter v. Department of Social Services, 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981), it is "plain beyond the need for multiple citation" that a natural parent's "desire for and right to `the companionship, care, custody, and management of his or her children'" is, in the words of the Santosky opinion, "an interest far more precious than any property right." 455 U.S. at 758-759, 102 S.Ct. 1388, 71 L.Ed.2d 599. Significantly, the Supreme Court in Santosky declared that "[t]he fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." Id., at 753, 102 S.Ct. at 1394.
Accordingly, and in light of the fact that termination of parental rights may not occur without clear and convincing proof of abuse, abandonment or neglect,[8] we hold that a parent of a dependent child retains the right to initiate, or participate in, a due process hearing. Consequently, whether or not J.D. continues to be dependent, her mother is entitled to pursue a determination of J.D.'s educational needs by way of the procedures set forth in section 230.23(4)(m)4.
REVERSED and REMANDED for further proceedings consistent with this opinion.
ZEHMER, J., concurs.
JOANOS, J., dissents in part and concurs in part with written opinion.
JOANOS, Judge, concurring in part and dissenting in part.
I concur in the majority's opinion, except as to their determination that the parent of *630 a child properly adjudicated a dependent, is entitled to pursue the determination of the child's educational needs by way of the procedures set forth in section 230.23(4)(m)4, Florida Statutes (1985). Instead, I would agree with appellees' view on this point. The term "ward of the state" is not used in Chapter 39 of the Florida Statutes. However, under case law, a child properly determined to be a dependent child is considered a ward of the state and court. In The Interest of R.J.C., 300 So.2d 54, 58 (Fla. 1st DCA 1974). Because of that relationship, the court acting in behalf of the state has become the guardian of the child and would have the authority allocated to the "parent or guardian" under section 230.23(4)(m)4. My reading of Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) and Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) reveals nothing that would require a contrary view.
NOTES
[1] See State, Department of Health and Rehabilitative Services v. Hollis, 439 So.2d 947 (Fla. 1st DCA 1983).
[2] Section 230.23(4)(m)4 was enacted as a result of Congressional directive in the Education of the Handicapped Act, 20 U.S.C. §§ 1400 et seq., that any state or local educational agency receiving federal assistance shall "establish and maintain procedures ... to assure that handicapped children and their parents or guardians are guaranteed procedural safeguards with respect to the provision of free appropriate public education ..." 20 U.S.C. § 1415(a). Specifically, 20 U.S.C. § 1415(b)(2) states that such procedures shall include an impartial due process hearing whenever a complaint has been received with respect to the evaluation or educational placement of the child.
[3] Rule 6A-6.03311(5) implements section 230.23(4)(m)4 and provides that the due process hearing "may be initiated by a parent or a school district on the proposal or refusal to initiate or change the identification, evaluation, or educational assignment of the student or the provision of a free appropriate public education to the student."
[4] See Smith v. Robinson, 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); see also Manecke v. School Board of Pinellas County, Florida, 762 F.2d 912, 923 (11th Cir.1985), cert. denied, 474 U.S. 1062, 106 S.Ct. 809, 88 L.Ed.2d 784 (1986) (wherein it was held that a federal court could not properly exercise original jurisdiction over a dispute between the school and the parents concerning the child's placement in special education since the clear implication of the language in 1415(e)(2) is that the court's function is confined, in the usual case, to that of reviewing administrative proceedings, "not determining in the first instance the appropriateness of a handicapped child's education").
[5] Section 39.01(9).
[6] "[O]nce a child has been lawfully declared to be a dependent child, it becomes a ward of the State... ." In re R.I.C., 300 So.2d 54, 58 (Fla. 1st DCA 1974). When a child is a ward of the state, rule 6A-6.0333 provides for appointment of a surrogate parent.
[7] Indeed, their interpretation could lead to patently unfair results. For example, in the instant case, the surrogate parent was appointed by the school board, reviewed the school's records, and discussed J.D.'s situation with school personnel. The absence of the mother's and J.D.'s participation in his decision is striking.
[8] In the Interest of P.A.D., 498 So.2d 1342 (Fla. 1st DCA 1986).